## W. A. GAINES ET AL. v. W. M. FARMER ET AL.

Decided May 6, 1909.

**1.—Judicial Power—Unincorporated Association—Regulation of Affairs.**

The civil courts will not interfere with the internal operation of voluntary unincorporated associations of private individuals, or assume to review their failure to conduct their business affairs according to the laws and rules of the order, except to protect some civil or property right of the party complaining.

**2.—Same—Right to Office.**

The right to hold an office or position in a purely benevolent society, carrying with it no salary or emolument, is not such a right as can be made the basis of a civil suit in the District Court.

**3.—Same—Case Stated.**

Plaintiff, claiming to have been elected to the office of Grand Master of an unincorporated benevolent association at a meeting of its "National Grand Lodge" in the State of Kentucky at which a rival candidate had been declared elected and had been installed in office by alleged irregular methods, brought suit to restrain the acting treasurer of the association from paying out its moneys on the order of the alleged usurping Grand Master. The rival Grand Master and Secretary, installed at such meeting, intervened, claiming to be the regularly elected officers, and by various amendments and pleadings the case assumed the form of a suit to determine the regularity and result of such election and the true persons entitled to act as officers of the association, which issues the court proceeded to decide and dispose of by its judgment. Held, that the matters adjudged were such as the court had no power to determine in the absence of some property right before it and to be affected by its decree.

**4.—Jurisdiction—Mandatory Order—Nonresident.**

The right to the office of National Grand Master of an unincorporated benevolent association, being enforcible only by mandatory decrees against the parties, both of whom were residents of other States, is one which the courts of Texas will not attempt to determine.

**5.—Same—Possession of Records.**

The court will not attempt to determine by its judgment the right to the possession of the records of a benevolent association as between two nonresidents, one of whom holds possession thereof in another State.

**6.—Injunction—Interest of Plaintiff.**

The court will not enjoin a resident of this State acting as treasurer of a benevolent society from paying out money of such association on the order of those acting as its officers, where the only interest of plaintiff in such relief arises from his claim that he, and not the person acting as chief officer, was elected to such position, and his right to direct such payment depends upon a determination of the regularity of such election.

Appeal from the District Court of Harrison County. Tried below before Hon. W. C. Buford.

*F. H. Prendergast* and *Hart, Mahaffey & Thomas,* for appellant.— The court erred in rendering judgment for Farmer and Bledsoe, because this court has no power nor authority nor jurisdiction to hear and determine the rights of Farmer to the office of National Grand Master of the Lodge and to amove Gaines from that office. 1 Bacon on Benefit Societies, secs. 105, 106; Mead v. Stirling, 23 L. R. A., 227;

People v. Board of Trade, 80 Ill., 134; Canfield v. Knights of Macca-bees, 13 L. R. A., 625.

A court of equity will not try the question of who is entitled to hold an office in a benevolent association and will not remove from an office therein a person who has been declared elected thereto by that tribunal of the association having authority to elect the officer; nor will it remove such a person from office or enjoin him from exercising the powers and duties thereof at the suit of a member of the association who alleges that he, and not the incumbent of the office, was in fact elected thereto, especially when the petitioner does not allege or prove that the office claimed has any pecuniary value, and neither alleges nor proves that any right which he has as a member of the association will be impaired or abridged by reason of the occupancy of the office by the person whom he seeks to have amoved therefrom. Same authorities.

*T. P. Young,* for appellee.—The presiding officer wrongfully declared appellant Gaines elected when the vote of the lodge showed that appellee Farmer had received thirty-eight majority, and when that announcement was made the scene that ensued is described by the witnesses as being pandemonium and indescribable, and a policeman appeared to preserve the peace. Gibson v. Morris, 73 S. W., 88; Robinson v. Templar, 59 Am. St. Rep., 201; Medical & S. Soc. v. Weatherly, 75 Ala., 248; Gieske v. Anderson, 77 Cal., 247; Connelly v. Masonic Mut. Ben. Ass'n, 18 Am. St. Rep., 302; Kearns v. Howley, 68 Am. St. Rep., 857.

HODGES, ASSOCIATE JUSTICE.—On June 18, 1907, Walter M. Farmer, one of the appellees, filed in the District Court of Harrison County a petition alleging in substance as follows: That he and W. F. Bledsoe, mentioned therein as the defendant, were members of an organization known as the United Brothers of Friendship and Sisters of the Mysterious Ten; that this organization was benevolent and fraternal in character, and had been in existence since 1861. Its object was to advance benevolence and Christianity, to relieve the sufferings of the distressed, to care for the widow and orphan, to visit the sick and bury its dead. Its membership consisted of males and females taken into the organization through local lodges and temples. When a sufficient number of local lodges were organized there was then formed a state grand lodge, having its jurisdiction limited to the particular State. The central and controlling body of the order is an assembly known as the National Grand Lodge of the order, and whose jurisdiction extends over the United States, Liberia, Africa and other countries. This national organization holds triennial sessions at such times and places as may be selected at each preceding session. The officers consist of a National Grand Master, Deputy Grand Master, Grand Secretary, Grand Treasurer, and other officers not necessary here to mention. The petition then sets out the various officers to be appointed and the membership of which the National Grand Lodge is composed. It also alleges that W. A. Gaines, as the then presiding National Grand Master, called the National Grand Lodge of the order

to meet at Lexington, Kentucky, on the 30th of July, 1906, in its regular triennial session. At that meeting the usual business was transacted; and among other things to be done was the selection of the grand officers for the next three years. It is alleged that Gaines, the presiding officer, and the plaintiff in this suit were each put in nomination for National Grand Master; that plaintiff received a majority of the votes, but that the then presiding officer who was temporarily occupying that position, having been put there by Gaines, declared Gaines elected; that Gaines, by the assistance of his adherents, usurped the office, and had been since that time acting and performing the duties of Grand Master, notwithstanding he had not received a majority of the votes. The petition sets out in detail the proceedings attending the election, gives the number of votes which it claims each received, and states facts which are sufficient upon their face to show the election of the petitioner. It is also alleged that W. F. Bledsoe, the defendant in this suit, was at the same time elected National Grand Treasurer of the organization; that it was a part of his duty to hold the funds of the National Grand Lodge, and at the time of this suit he had in his possession such funds amounting to about $1,000; that said sum was held subject to the order of the National Grand Master and the National Grand Secretary; that when orders are drawn on the treasurer signed by the National Grand Master and the National Grand Secretary, the treasurer is required to pay the sum therein directed in accordance therewith. It is charged that W. A. Gaines, fraudulently acting as National Grand Master as aforesaid, threatens to have an order drawn upon the defendant Bledsoe, as treasurer, and that Bledsoe threatens to pay out the money in accordance with the order signed by Gaines and Perry, the latter alleged to be the National Grand Secretary; that the plaintiff has reason to believe and does believe that Gaines will carry out his threats to have the order drawn upon said Bledsoe and to have Perry sign the same, and that Bledsoe will pay over the money in accordance with such order to M. R. Perry. The petition further alleges as follows: That "it is his (plaintiff's) intention and desire to contest the said election and to have the question as to whether or not he or the said W. A. Gaines was elected to the office of National Grand Master of said National Grand Lodge aforesaid judicially determined, and that the said Gaines threatens to pursue the course set forth before the said question as to whether or not this plaintiff or the said Gaines was elected is determined." The petition closes with a prayer asking that Bledsoe be enjoined and restrained from paying out any money he now holds as National Grand Treasurer of the National Grand Lodge upon any orders signed by Gaines and Perry, until such time as it shall be judicially determined whether or not the plaintiff or Gaines was duly elected to the office of National Grand Master of the aforesaid National Grand Lodge. This petition was presented to the district judge in vacation, and a temporary restraining order issued in accordance with the prayer of the plaintiff. Bledsoe filed no answer to this petition.

In October, 1907, Gaines, Perry, and one A. W. Weatherford filed a petition of intervention in which they set up that Gaines was the then duly elected and acting National Grand Master, that Perry was

the National Grand Secretary and that Weatherford was the National Grand Treasurer of the order. It was also charged that the suit begun by Farmer against Bledsoe was collusively filed and prosecuted for the purpose of obtaining a judicial determination of the question of whether Gaines or Farmer was entitled to the office of National Grand Master. It charged that Farmer was at that time not a member of the order. It also claimed that Bledsoe was not then the National Grand Treasurer of the order, and had not been since the 3d of June preceding; that at that date he had been removed from the office of treasurer, in accordance with the rules and regulations of the order, by the National Executive Committee, and that Weatherford had been appointed in his place and was now the National Grand Treasurer. The petition then proceeds to state the time and place when Gaines was elected, and to also allege the election of Perry as National Grand Secretary to succeed the plaintiff, Walter M. Farmer, who previously held that office. It charges that Farmer had refused and still refuses to turn over to Perry, although requested to do so, the records of the National Grand Lodge pertaining to the office of the National Grand Secretary, except the seal. The petition concludes with the following prayer for relief: (1) That they have judgment declaring that Gaines is the National Grand Master; (2) that Perry is the National Grand Secretary, (3) and that Weatherford is the National Grand Treasurer; (4) that Farmer be enjoined from further setting up any claim to the office of National Grand Master of the order; (5) that Bledsoe be enjoined from further setting up any claim to the office of National Grand Treasurer; (6) that Farmer be ordered, directed and enjoined to turn over to Perry, the National Grand Secretary, all of the records, books, papers and documents of every kind which he then had in his possession as Perry's predecessor in office; (7) that Bledsoe be required to file an account showing what moneys he then had in his possession belonging to the order, and the disbursements he had made since June 3d preceding; (8) that he be ordered, directed and enjoined to turn over all such moneys, together with the records of the office of National Grand Treasurer, to Weatherford.

In reply to this petition of intervention the plaintiff, Farmer, filed what is styled his "First Supplemental Petition," specially excepting to several features interposing a general denial, and specially denying the facts alleged as to his not being then a member of the order, and denying the authority of the National Executive Committee, or those who pretended to act as such, to expel him or Bledsoe from the order. Bledsoe also filed an answer to this petition of the interveners, in which he made practically the same exceptions and defensive pleadings in bar, claiming that the executive committee, or those who pretended to act as such, were without authority to remove him from office, and that they did so without giving him any notice. Trial amendments were filed by both the original plaintiff and the interveners, setting up other facts which are not necessary here to be mentioned. The supplemental petition filed by Farmer concludes with the prayer that he be declared National Grand Master of the order, and that Bledsoe be declared National Grand Treasurer, and that the interveners be enjoined from interfering with their authority and powers as such. The answer of

Bledsoe concludes with the prayer that he be declared National Grand Treasurer of the order and for general relief.

The case appears to have been tried upon all the issues joined in the pleadings, and resulted in the jury's returning the following verdict: "We, the jury, find a verdict in favor of the plaintiff, W. M. Farmer, and we further find that the injunction issued herein be perpetuated, and we find in favor of Bledsoe against Weatherford." Upon this verdict the court entered up a judgment in favor of Farmer against Bledsoe, enjoining him from paying over any money belonging to the order upon the order of Gaines; adjudged and decreed that Farmer was the National Grand Master of the order for the term beginning August, 1906; that Gaines was not elected, and that he be enjoined from exercising in any form whatever the rights and privileges of the office of National Grand Master of the order. It is also decreed that Bledsoe was the National Grand Treasurer, and as such was entitled to the possession of all the funds of the order, and requiring Weatherford, Gaines and Perry, and Farmer, to observe that decree. It also adjudged that Weatherford was not the treasurer, and was not entitled to the possession of any of the funds of the order, and that Bledsoe be required to hold the funds and pay them out on the order of Farmer as grand master. Gaines, Perry and Weatherford were enjoined from further claiming that Gaines was the National Grand Master. From this judgment the interveners have appealed. Bledsoe, appearing as an appellee, adopted the brief of Farmer filed in this court.

The pleadings show that Farmer resides in the State of Illinois, Gaines in Kentucky, Perry in Arkansas, Weatherford in Bowie County, Texas, and Bledsoe in Harrison County.

It is apparent from an inspection of the pleadings of the parties and the issues determined by the trial court in the judgment rendered that there are several distinct controversies involved in this litigation, in none of which is there disclosed any matter sufficient to invoke the jurisdiction of the court. The pleadings show that the organization known as the United Brothers of Friendship and Sisters of the Mysterious Ten was a voluntary unincorporated association of individuals, benevolent and fraternal in its objects. There was nothing connected with its business which would indicate that any salary or pecuniary emolument was attached to any of the offices created; neither do the pleadings of any of the parties intimate that such was the case. The rights and privileges of holding the offices and of exercising their functions, so far as we are informed, were purely honorary. The original petition filed by Farmer sought to enjoin Bledsoe, the National Grand Treasurer, from paying over any of the funds of the association held by him as treasurer upon the warrant or direction of Gaines, the acting National Master, pending an effort on the part of Farmer to have his right to occupy and hold the position of National Grand Master judicially determined. When or how that judicial determination was to be had is not made clear by the petition standing alone, but, in view of the subsequent pleadings and of the issues joined and decided, it may be safely concluded that it was Farmer's intention to make this suit the means of obtaining that determination. The petition

itself bases the right to the injunction against Bledsoe upon the claim of Farmer that he was the duly elected National Grand Master, and as such he alone had the right to direct the disbursement of the funds held by the treasurer; but, judging from his pleadings, he does not intend to assert that right to control the disbursement of the funds in the hands of the treasurer till after his right to the office of National Grand Master had been judicially declared. He sets out at length and with great minuteness of detail the grounds upon which he relies to establish his claim to the office. Practically, these consist of allegations that an election was held by the National Grand Lodge in August, 1906, for the purpose of selecting, among other officers, a National Grand Master; that he, Farmer, received a majority of the votes cast, but that Gaines was fraudulently declared elected and was also fraudulently inducted into the office of National Grand Master, and is now wrongfully exercising the functions of that position. In asking for the writ of injunction Farmer does not claim that he does so as a member, or representative, of the association for the purpose of preserving the property rights of the association or its members, or to prevent a diversion of the funds to an unauthorized purpose; neither does he say that any injury will or is likely to result to the association or its members from the payment of the money by Bledsoe upon the order of Gaines, or that he himself will sustain any private damages on that account. It is clear from Farmer's averments that he has not heretofore set himself up as a rival of Gaines in attempting to exercise the authority of National Grand Master, but is now attempting to have the District Court pass upon the conflicting claims of himself and Gaines to the position in question and determine which was duly elected in August, 1906, to that office. The right Farmer asserts is predicated upon the claim that he received a majority of the votes cast at that election, and is therefore entitled to hold the office; that in declaring Gaines elected and inducting him into the office the National Grand Lodge violated the rules and regulations of the order and deprived him, Farmer, of some right sufficient to form the basis of a civil suit. He is therefore in the attitude of asking the civil courts to review the action of the National Grand Lodge and to do that which he claims the lodge should have done—declare him the duly elected National Grand Master. We think it is a well-established rule of law that the civil courts will not interfere with the internal operations of such associations of private individuals, or assume to review their failure to conduct their business affairs according to the laws and rules of the order, except for the purpose of protecting some civil or property right of the party complaining. When the National Grand Lodge, the proper tribunal of this association, passed upon and declared the result of that election, it was binding upon the courts and all concerned, unless it be shown that the result was accomplished through a proceeding violative of the rules and laws of the order, and that Farmer was thereby deprived of a civil or property right to which he was entitled under the constitution and by-laws of the order. By-laws adopted for the government of such organizations are regarded as the contract of the members with one another, and by these their individual rights as such members are to be determined in the con-

duct of the business affairs of the association. Most of the precedents furnished by the reported cases where courts have interfered to protect members from irregular proceedings of corporations and associations have arisen where the society or corporation through some of its authorized agencies has exercised the power of expulsion from the organization. In such cases it is uniformly held that the civil courts will inquire into the legality and regularity of the proceedings of expulsion only for the purpose of protecting some valuable or property right. This protection is extended upon the same principle, by which the courts are guided in protecting contractual rights arising in the ordinary business relations of life.

But this action is not against the society for wrongfully depriving the complainant Farmer of any of the rights of membership guaranteed to him by the laws of the order. He claims no relief against the association itself, but is seeking to enforce a right as against another member. The action is therefore either one to contest the election by which Gaines claims to hold the office of National Grand Master, or it is one to recover that office from Gaines. We think the petition, considered in connection with the subsequent pleadings, will bear the construction that it is intended as a contest of the election. But in either event the petition does not state a cause of action within the jurisdiction of the District Court. Simply contesting an election for the purpose of having the complaining party declared the person elected is not a matter of which courts of justice can take cognizance. Williamson v. Lane, 52 Texas, 335; Ex parte Towles, 48 Texas, 413; Rogers v. Johns, 42 Texas, 339; Wright v. Fawcett, 42 Texas, 203. It is true the cases cited above refer to the election of public officers, but the character of the proceedings and the issues to be determined are substantially the same if it be the primary purpose of the suit to merely ascertain and declare the result of an election. It is only when the ascertainment of the correct result of an election is incidental to the enforcement of the right to the office, or some other judicable issue, that civil courts, in the absence of special authority, will undertake to review the regularity of the election proceedings. State v. Owens, 63 Texas, 261; Bell v. Faulkner, 84 Texas, 189, 19 S. W., 480. The right to sue for a public office is well recognized in this State, but this is based upon the principle that the right to hold a public office is a valuable property right, and as such can be enforced in the courts. When one seeks to recover an office it is essential that he should allege its pecuniary value, and it must also affirmatively appear that this value is within the jurisdiction of the court where the suit is filed. We do not think the right to hold an office or position in a purely benevolent society, carrying with it no salary or emolument, is such a right as can be made the basis of a civil suit in the District Court. The person deprived of it loses no valuable civil or property right; he is deprived of nothing for which he could claim damages. But even if it be shown that a salary, or some emoluments, were attached to the position of National Grand Master of this society, it does not follow that the mere fact that Farmer received a majority of the votes actually cast would vest him with such a right as could be made the basis of a civil action. The distinction between the effect of receiving a ma-

jority of the votes cast in such an election and one held under the provisions of the statute to fill a public office is manifest. In the latter case the law provides that the one receiving the most legal votes shall fill the office, and hence that fact alone confers the right to the office. While in this society it was shown to be merely the duty of the National Grand Lodge to select the national officers, and presumably this might be done in any manner it saw fit to adopt. Hence the mere receipt by one of a majority of the ballots cast did not ipso facto vest in him any right to the position. The lodge, should it see proper to do so, might reconsider the vote, or adopt a different method of making the selection. The fact that Gaines was declared elected, was regularly installed according to the forms of the order, and had held the position for nearly one-third of the term, is sufficient to justify the conclusion that his selection, if not regular, was, at least, acquiesced in by the membership of the National Grand Lodge in such a manner as to negative the claim of election by Farmer. Neither the original petition nor the petition of intervention presents any cause of action. Wellenvoss v. Grand Lodge K. of P., 45 S. W., 360; St. Patrick's Alliance v. Byrne, 44 Atl., 717; Ryan v. Cudahy, 49 L. R. A., 353, and cases cited in notes.

We think there is still another reason why the judgment rendered in this case is erroneous, and also why a court of this State should not entertain a suit such as this. It appears from the pleadings that both Farmer and Gaines are permanently domiciled in other States, one in Illinois and the other in Kentucky. The relief which each seeks against the other is such as can be given only through injunctive or mandatory decrees the process for the enforcement of which must be directed against the person of the party cast in the suit. It necessarily follows, therefore, that if this court had the authority to make the decree it would be without power to enforce it should the parties decline to comply with the orders made. Royal Fraternal Union v. Lunday, 51 Texas Civ. App., 637.

The interveners sought by cross-action to recover from Farmer the records and documents belonging to the office of secretary of the association. This was presented in the form of a petition asking that Farmer be compelled to deliver those records to Perry, one of the interveners. It may be that Perry had the right to the possession of the records; this fact does not seem to have been disputed by Farmer. But, for the reason that Farmer resides beyond the territorial limits of the State and is not within the jurisdiction of the court, the decree sought could not be enforced and should not be granted. Presumably the records referred to were in the personal possession of Farmer, and likewise beyond the limits of this State. The interveners further sought to recover the money and other lodge property now held by Bledsoe as the National Grand Treasurer of the order, upon the assumption that Bledsoe has been removed and Weatherford installed as his successor in the position of treasurer. The court decided as a matter of law that under the evidence Weatherford had not been regularly appointed the National Grand Treasurer, and that Bledsoe had not been regularly removed from that office, and so instructed the jury. No complaint is made of that instruction on this appeal, and

we assume that the facts were sufficient to justify the conclusion of the court. The petition of intervention also fails to allege that Weatherford was authorized or empowered to institute suit to recover the funds of the association in the hands of Bledsoe.

According to the allegations of Farmer, his right to the injunction against Bledsoe was dependent upon the success of his attempt to establish in the trial court his right to the office of National Grand Master. Unless the court could declare him the National Grand Master it follows logically that Farmer was not entitled to the injunction against Bledsoe. We have therefore concluded that the court erred in entertaining jurisdiction of this controversy at its incipiency and in rendering the various decrees entered. The errors which we have discussed are, we think, fundamental, and there was no necessity for their having been assigned in the record.

For the reasons stated the judgment of the trial court is in all things reversed, and the suits, both of the appellee and the appellants, are hereby ordered dismissed.

*Reversed and dismissed.*