**Dr. Ralph G. HODGES, et al.,**
**Appellants,**

v.

**ARLINGTON NEUROPSYCHIATRIC CENTER, INC. d/b/a Sunrise Psychiatric Hospital, et al., Appellees.**

**No. 18614.**

Court of Appeals of Texas,
Fort Worth.

Feb. 18, 1982.

Rehearing Denied March 11, 1982.

Atkins & McLarty and Bill Atkins, Arlington, for appellants.

Chester G. Ball, Arlington, for appellees.

Before MASSEY, C.J., and SPURLOCK and HOLMAN, JJ.

OPINION

SPURLOCK, Justice.

This is an appeal from a summary judgment. Drs. Ralph G. Hodges and Richard J. Cancemi are psychiatrists and were members of the medical staff of the Sunrise Psychiatric Hospital, a privately-owned psychiatric hospital. In June, 1980, both doctors' staff privileges were terminated. Both doctors individually instituted suits for wrongful termination of staff privileges. Their suits were later consolidated for the purpose of determining by summary judgment the question of law as to whether or not a physician can have a cause of action against a privately-owned hospital for an arbitrary and capricious termination of staff privileges. The trial court granted defendants' motion for summary judgment and held that plaintiffs can have no cause of action for wrongful termination of staff

privileges against a privately-owned mental hospital. Plaintiff doctors appeal from that judgment.

We affirm.

The facts are essentially undisputed. Sunrise Psychiatric Hospital is a privately-owned hospital run by a board of directors comprised of three physicians and three laymen. The directors own 100% of the stock. The controversy which ultimately lead to the termination of the doctors' staff privileges arose when the hospital instituted a new patient treatment plan for all hospital patients called the "Core Program". Among other things, the Core Program provided for hospital-sponsored group therapy treatments for the hospital's patients. A psychologist was employed to conduct the group therapy sessions and patients were charged by the hospital for each session. Both Drs. Hodges and Cancemi were opposed to the idea of the hospital requiring that their patients participate in the group therapy sessions and refused to prescribe the required group therapy treatments for their patients. Strife developed between the doctors and the board of directors over the doctors' refusal. Both doctors openly and vocally disapproved of the hospital-sponsored group therapy sessions and refused to prescribe the treatment for their patients. As a result, after repeated attempts by the hospital to get their compliance, Dr. Hodges and Dr. Cancemi were informed by letter that the board would meet on June 9, 1980, to consider the suspension of their staff privileges. On June 2, 1980 both doctors were advised that the board meeting had been changed to June 4, 1980. On June 4, Dr. Hodges and Dr. Cancemi arrived at the meeting with an attorney and a court reporter. The court reporter was not permitted to stay. The board would not allow a recording to be made of the meeting. The doctors' attorney was permitted to remain, but was not allowed to participate in the proceedings. Both Dr. Hodges and Dr. Cancemi were given the opportunity to address the board.

In closed session the board voted and the doctors were notified by letter that their existent staff privileges were suspended effective immediately and that their staff privileges coming up for annual review would not be renewed. It is undisputed that the doctors' staff privileges were suspended solely because they would not prescribe the Core Program therapy sessions for their patients. It is undisputed that both doctors are highly qualified psychiatrists.

On appeal by one point of error, appellants contend that they have a cause of action against the hospital and its directors for damages for wrongful termination of staff privileges and for unlawful interference with their right to practice medicine. Specifically, they claim that (1) the board of directors cannot lawfully require them to prescribe group therapy treatments for their patients as a condition of staff privileges since to do so would constitute an unlawful practice of medicine by the board and hospital; and (2) the Sunrise Psychiatric Hospital, though privately-owned, is quasi-public in nature by virtue of the fact that it is subject to vigorous state licensing requirements and because its purpose is to provide health care services to the public. Therefore, it is their contention, the hospital and its directors are accountable for their actions and may not summarily suspend a doctor's staff privileges without affording due process protection and demonstrating good cause.

In support of their position, appellants cite no Texas cases, but rely upon authority from New Jersey and California to the effect that because private hospitals serve public needs and, therefore, are quasi-public institutions, staff physicians must be afforded "fair treatment". The position of these courts is that although private hospitals are not required to provide due process, physicians are entitled to protection from irrational and unreasonable treatment. See, *Greisman v. Newcomb Hospital*, 40 N.J. 389, 192 A.2d 817 (1963); *Garrow v. Elizabeth General Hospital, Etc.*, 79 N.J. 549, 401 A.2d 533 (1979); *Miller v. Eisenhower Medical Center*, 27 Cal.3d 614, 166 Cal.Rptr. 826, 614 P.2d 258 (Calif.1980); *Ap-*

**538**

*plebaum v. Bd. of Directors of Barton Mem.* 104 Cal.App.3d 648, 163 Cal.Rptr. 831 (1980). Even should we attribute validity to their expressions, we do not find these cases applicable as there is no evidence that the doctors were subjected to irrational or unreasonable treatment.

In the present case, the issue focuses on whether the hospital board of directors may summarily dismiss physicians on their staff who refuse to comply with hospital rules. The hospital and its directors argue that the right to terminate a doctor's staff privileges is a prerogative of the hospital because it is privately-owned. They further contend that doctors have no remedy even if termination of their staff privileges were arbitrary and capricious (which they argue was not the case here). In support of their position they cite *Weary v. Baylor University Hospital*, 360 S.W.2d 895 (Tex.Civ.App.— Waco 1962, writ ref'd n. r. e.); *Southern Methodist University v. Smith*, 515 S.W.2d 63 (Tex.Civ.App.—Dallas 1974, writ ref'd. n. r. e.) and *Charter Medical Corp. v. Miller*, 605 S.W.2d 943 (Tex.Civ.App.—Dallas 1980, writ ref'd. n. r. e.).

In *Weary v. Baylor University Hospital, supra,* the trial court granted the hospital's motion for summary judgment under circumstances and upon allegations largely the same as those in the present case. On appeal, Weary argued that the hospital deprived him of due process in failing to renew his staff privileges. Weary was given a hearing before the medical staff in order to voice his opinions concerning renewal of his privileges, but he was not permitted to bring witnesses or cross-examine witnesses adverse to his position. After discussing the fact that the hospital's governing board had the final authority and power, without restriction, to determine who shall practice in the hospital, the Waco Court held that "(Weary) has not stated a cause of action against defendant (Baylor Hospital)."

Recently in *Charter Medical Corp. v. Miller, supra.*, the Dallas Court, citing *Weary* as authority, held that the plaintiffs, doctors of podiatry, were not entitled to procedural or substantive due process when the

hospital's board of directors adopted revised by-laws which restricted the podiatrists' hospital privileges. Under the revised by-laws, podiatrists could only admit patients with concurrence of a medical staff member who was made responsible for the patient's overall care. Surgical procedures could only be performed after consultation with and under direct supervision of a qualified medical staff member. Plaintiffs alleged that the implementation of these by-law provisions precipitated a conspiracy on the part of the hospital and its owners to interfere with their practice of podiatry and their doctor-patient contractual relationships. The Dallas Court noted that "the authorities are clear that plaintiffs have no common law rights to procedural or substantive due process," and stated:

"In this case, as in *Weary*, final governing authority was vested in the hospital's board of directors. Moreover, insofar as a physician's personal privilege to use a private hospital facility is concerned, procedural due process is not required." *Id.* at 951.

Based on the authority of *Weary* and *Charter Medical*, we hold that under the facts in this case, appellants have stated no cause of action against the hospital and its directors. The board of directors had the authority and power to set its own policy and rules and to manage its own affairs with regard to staff privileges. When the board adopted the Core Program, which the record reflects to be an accepted and recognized program similar to that in other mental hospitals, all members of the hospital's staff and other hospital personnel were under a duty to implement the program. Simply because Dr. Hodges and Dr. Cancemi did not agree with the hospital-sponsored group therapy program, did not give them the right to refuse to participate in the program. It is undisputed that for the program to work, all staff doctors had to participate, and that both Dr. Hodges and Dr. Cancemi, after repeated efforts by the medical director and board to get their compliance, continued to refuse to participate in the program's hospital-sponsored group

therapy treatment; and that their refusal to participate caused dissension and discord in the hospital. When the doctors' refusal to participate in the program became so pronounced as to interfere with orderly management and discipline, and both doctors persisted in violation and disobedience, clearly the hospital's board of directors had the authority and power to remedy the inharmonious situation by suspending the doctors' staff privileges. In addition, it is noted that both doctors were given every opportunity to comply with the rules and were given an opportunity to address the board on at least two occasions before their staff privileges were suspended.

Appellants' point is overruled.

Judgment of the trial court is affirmed.