**DALLAS COUNTY MEDICAL SOCIETY and Texas Medical Association, Appellants,**

v.

**Emmanuel E. UBIÑAS–BRACHE, M.D., Appellee.**

No. 05–97–00027–CV.

Court of Appeals of Texas, Dallas.

Feb. 7, 2001.

Rehearing Overruled Oct. 18, 2001.

Scott Patrick Stolley, George C. Chapman, Jane Politz Brandt, Dallas, for appellants.

Joseph O. Collins, Jr., Scott D. Weber, Dallas, for appellee.

Before THOMAS, Chief J., and WRIGHT and ROSENBERG,[1] JJ.

## OPINION

Opinion By Justice ROSENBERG (Assigned).

This case involves a dispute over the membership of Dr. Emmanuel E. Ubiñas–Brache (Ubiñas) in the Dallas County Medical Society (DCMS). The DCMS expelled Ubiñas. He appealed the expulsion through the appeals process of the Texas Medical Association (TMA). After adverse rulings, he brought this action in district court on the basis of a violation of due process and breach of agreement. After a jury trial challenging the actions of the DCMS and the TMA, the trial court entered judgment on the findings that the

---

1. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

DCMS was enjoined from expelling Ubiñas on the issues raised in the complaints that led to the expulsion. In sixteen points of error, the DCMS and TMA appeal the judgment, alleging it was entered erroneously because they were entitled to medical peer review immunity under the Medical Practice Act[2] (the Act); the defenses of estoppel and waiver were proved; the evidence was legally and factually insufficient to support the jury's findings; the trial court improperly excluded their evidence; and the trial court improperly granted an injunction and failed to award attorney's fees. Ubiñas brings two cross-points regarding his entitlement to attorney's fees. Concluding that this suit is barred by medical peer review immunity, we reverse the trial court's judgment and render judgment against Ubiñas on his medical peer review complaints. We remand for further proceedings regarding the requests for attorney's fees.

## FACTS AND PROCEDURAL BACKGROUND

In 1984, Ubiñas, a Dallas county physician specializing in craniofacial and plastic and reconstructive surgery, joined the DCMS. The DCMS is a private, nonprofit organization of physicians that is dedicated to the promotion and maintenance of high standards of ethical and medical practice. The DCMS is a chartered member of the TMA. Membership in the DCMS is voluntary. Each member must subscribe to the American Medical Association's principles of medical ethics and agree to be bound by the DCMS disciplinary procedures. The DCMS also provides mechanisms to resolve patient complaints against DCMS members.

In May 1991, Sharon Fleming filed a complaint with the DCMS regarding Ubiñas's surgical treatment of her broken finger. Her complaint was forwarded to the Mediations Committee, which referred it to the Fee Dispute Committee. That committee conducted an investigation through a member, Dr. Paul Pin. Then, in September 1991, the complaint was forwarded to the Board of Censors.

In February 1992, while the Board of Censors was still reviewing Fleming's complaint, the DCMS received a second complaint against Ubiñas about his treatment of Kevin Fair. On Fair's behalf, Dr. Michael Maris, a family friend, filed a complaint alleging an outrageously high bill for minor injuries. Because the Fleming complaint was pending and this second complaint was made by a physician, it was referred to the Board of Censors.

In May 1992, the Board of Censors scheduled a closed-door meeting with Ubiñas. Before the meeting, a third complaint was filed against Ubiñas by a patient, Dewayne Randle, who complained about the high amount of the bill for the surgical repair of his lacerated finger. Because of the other complaints, Randle's complaint was referred to the Board of Censors.

Ubiñas received notice of all the complaints and responded to them. He agreed to reduce Randle's bill, claiming a billing error. At the closed-door meeting, Ubiñas and the Board of Censors discussed all three complaints. After the

---

**2.** When these proceedings took place in the trial court, the Medical Practice Act was contained in article 4495b of the Revised Civil Statutes of Texas. Effective September 1, 1999, that article was repealed and recodified in the Texas Occupations Code. *See* Act of Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 18, 1987 Tex.Gen.Laws 2325, 2335, *repealed by* Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 6a, 1999 Tex.Gen.Laws 1431, 2440 (current version at Tex.Occ.Code Ann. § 160.010 (Vernon 2001)). In this opinion, we refer to article 4495b as it existed when the trial court made its decision.

meeting, the Board wrote a letter to Ubiñas outlining concerns and asking him to respond in writing. The Board then engaged experts as consultants.

In December 1992, after reviewing the experts' reports, Ubiñas's response, and other documentation, the Board of Censors issued a report recommending that Ubiñas be expelled from the DCMS and the TMA. In the report, the Board made findings that Ubiñas acted unethically in that he:

(1) failed to deal honestly with all three patients, by providing services that were unnecessary and inconsistent with the clinical findings; and

(2) engaged in deceptive practices by providing all three patients with unnecessary services, resulting in "over treatment" and unnecessary charges.

At Ubiñas's request, the Board of Directors held a ten-hour hearing in which expert evidence was presented, witnesses examined and cross-examined, and attorneys' arguments were made. After Ubiñas submitted his written closing statement, the Board of Directors met in executive session. The Board voted to expel Ubiñas from the DCMS and issued a disciplinary order. The order contained the findings that included the following:

- the repair of one of Fleming's ligaments was considered of questionable value, and charging for the repair would not likely be considered usual and customary.

- it was unnecessary to repair a nerve and an artery in Fair's thumb, and such repairs constituted "over treatment" that is not usual and customary.

- there was no evidence of damage to a nerve and an artery in Randle's finger, there was no evidence that Dr. Ubiñas actually performed repairs on those

structures, and unnecessary charging was a deceptive practice.

Ubiñas then appealed to the TMA Board of Councilors. After hearing oral argument and receiving briefs submitted by Ubiñas and DCMS, the Board of Councilors affirmed the expulsion. Ubiñas next appealed to the American Medical Society's Council on Ethical and Judicial Affairs, which affirmed the expulsion.

After the medical organizations' adverse decisions, Ubiñas filed this suit in district court. Ubiñas alleged that he had been denied due process under the disciplinary procedures of the DCMS as set out in the TMA's Hearings Procedures Manual, as well as procedural due process guaranteed by the Texas Constitution, and that his contract with the association was breached. Specifically, his due process claims were that the manual had no prescribed burden of proof, the proceedings were not confidential, and the findings of the DCMS were contrary to the evidence. His breach of contract claim was that the disciplinary proceedings were not conducted as the manual provided. The breach of contract claim involved the same factual issues as the due process claims. Ubiñas sought an injunction only. He claimed that, absent the injunction, he would suffer irreparable harm because the expulsion would result in disciplinary action by the Texas State Board of Medical Examiners, loss of hospital staff privileges, and probable inability to obtain medical malpractice insurance. The DCMS and the TMA answered, claiming that there was no cause of action for the facts alleged and that the medical associations were immune from suit and damages under the federal and state medical practice acts. The case was tried to a jury. The trial court refused to charge the jury under the Act requiring a finding of malice for a suit against a medical peer review committee. The trial court's

charge for liability was presented and answered as follows:

Did any of those named below fail to provide Dr. Ubiñas, a member subject to disciplinary action, with fundamental fairness and a fair and good faith proceeding?

Answer "Yes" or "No" as to each of the following:

a. Dallas County Medical Society /Yes/

b. Texas Medical Association /Yes/

The jury also found that the DCMS's and the TMA's failure to provide fundamental fairness and a fair and good faith proceeding caused Ubiñas irreparable harm. The trial court entered judgment in accordance with the jury verdict, enjoining the DCMS from expelling Ubiñas from the DCMS. The DCMS and the TMA appeal the trial court's judgment.

## MEDICAL PEER REVIEW IMMUNITY

In the sixth point of error, appellants contend that the trial court failed to rule as a matter of law that the DCMS and the TMA are immune from suit under sections 5.06(*l*) and (m) of the Act. Ubiñas responds that appellants did not plead section 5.06(*l*), the proceeding did not qualify as a medical peer review action, section 5.06(m) does not preclude an action for injunctive relief, and the exercise of immunity would deny Ubiñas constitutional rights.

### Pleading Immunity From Suit

▉ Appellants did not plead in their answer section 5.06(*l*) of the Act, which is the specific section that provides immunity from causes of action. See Former TEX.

REV.CIV. STAT.ANN. arts 4495b, § 5.06(*l*).[3] However, they did assert other immunity provisions under the Act and asserted that Ubiñas had failed to state a cause of action under Texas law. Generally, an affirmative defense is waived if it is not pleaded. TEX.R.CIV.P. 94. Though not specifically mentioned in rule 94, immunity is an affirmative defense that ordinarily must be pleaded to avoid waiver. See, e.g., Davis v. City of San Antonio, 752 S.W.2d 518, 519–20 (Tex.1988) (governmental immunity). However, the Texas Supreme Court concluded that the defense of immunity is not waived by the failure to specifically plead it if it is apparent on the face of the petition and established as a matter of law. Shoemake v. Fogel, Ltd., 826 S.W.2d 933, 937 (Tex.1992) (citing Phillips v. Phillips, 820 S.W.2d 785, 789–90 (Tex.1991)). Thus, rule 94's requirement of pleading is not absolute. Shoemake, 826 S.W.2d at 937. Here, the defensive pleadings raise immunity for medical peer review and state that there is no cause of action for Ubiñas's claims. Therefore, appellants did not waive the immunity defense.

### Medical Peer Review Action

A health care entity that is covered under the Act is "a professional society or association, or committee thereof, of physicians that follows a formal peer review process for the purpose of furthering quality medical or health care." Former TEX. REV.CIV.STAT.ANN. art. 4495b, § 1.03(a)(5).[4] For a professional society's committee to qualify as a medical peer review or professional review committee, it must be a committee or the governing board of the society that operates under written by-laws, approved by the society's policy-making

---

**3.** See Act of Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 18, 1987 Tex.Gen.Laws 2325, 2335 (repealed 1999) (current version at TEX OCC.CODE ANN. § 160.010 (Vernon 2001)).

**4.** Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 1, 1987 Tex.Gen.Laws 2325, 2325 (repealed 1999) (current version at TEX.OCC.CODE ANN. § 151.002(a)(5)(C) (Vernon 2001)).

body or the governing board, and is authorized to evaluate the quality of medical and health care services or competence of the physician. *Id.* § 1.03(a)(6).[5] The peer review action that is protected under the Act is "the evaluation of medical and health-care services, including evaluation of the qualifications of professional health-care practitioners and of patient care rendered by those practitioners." *Id.* § 1.03(a)(9).[6] A peer review includes "the evaluation of the merits of complaints relating to health care practitioners and determinations or recommendations concerning those complaints." *Id.*

 Here, the DCMS and the TMA are professional associations and thus meet the definition of health care entities under the Act. The evidence is undisputed that these organizations established peer review committees and operating procedures for those committees by written by-laws properly adopted by the organizations and that those peer review committees reviewed the complaints against Ubiñas. The uncontroverted evidence is that the DCMS Board of Directors reviewed patient care complaints against Ubiñas. To controvert the fact that this was a peer review action subject to the Act, Ubiñas claims the evidence demonstrates that the committee did not follow its own operating rules and provide due process and a fair hearing. The Act, however, does not provide that the operating procedures must be strictly followed, only that procedures are written and properly adopted for a peer-review action. Thus, the DCMS and the TMA established the action as a medical peer review determination covered by the Act.

### *Immunity from Injunction*

 The Act provides for two types of immunity. The first is immunity from a cause of action. Section 5.06(*l*) provides that:

> A cause of action does not accrue against ... the health-care entity from any act, statement, determination or recommendation made, or act reported, without malice, in the course of peer review as defined by this Act.

*Id.* § 5.06(*l*).[7] The second is immunity from civil liability.[8] Section 5.06(m) provides:

> A person, health-care entity, or medical peer review committee, that, without malice, participates in medical peer review activity or furnishes records, information, or assistance to a medical peer review committee or the board is immune from any civil liability arising from such act.

*Id.* § 5.06(m).[9]

 Urbiñas argues that the immunity provisions do not apply because he did not

---

5. Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 1, 1987 Tex.Gen.Laws, 2325, 2325 (repealed 1999) (current version at Tex.Occ.Code Ann. § 151.002(a)(8)).

6. Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 1, 1987 Tex.Gen.Laws, 2325, 2326 (repealed 1999) (current version at Tex.Occ.Code Ann. § 151.002(a)(7)).

7. Act of Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 18, 1987 Tex.Gen.Laws 2325, 2335 (repealed 1999) (current version at Tex. Occ.Code Ann. § 160.010(b)).

8. Ubiñas claims that the section providing relief from civil liability does not apply to injunctions that were requested in this case. Nevertheless, damages and injunctions are both considered civil liability. *See Tex. Dep't of Transp. v. Ramming*, 861 S.W.2d 460, 468 (Tex.App.—Houston [14th Dist.] 1993, writ denied).

9. Act of Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 18, 1987 Tex.Gen.Laws 2325, 2335 (repealed 1999) (current version at Tex. Occ.Code Ann. § 160.010(a)(2)). The recodi-

request damages. That argument is without merit. First, section 5.01(*l*) provides immunity for causes of action. This provision is not limited by the type of remedy requested. Second, section 5.06(m) provides immunity from civil liability. Civil liability includes injunctions as well as damages. *See Tex. Dep't of Transp.*, 861 S.W.2d at 468 (explaining statute may specifically limit liability to damages, thus excluding injunctive relief). Therefore, the immunity provisions can be invoked regardless of the remedy sought in a lawsuit.

### Proof of Malice

Under the Act, there is a threshold standard of malice to state a cause of action against a health care entity for medical peer review actions. *See St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 509 (Tex.1997). Accordingly, for Ubiñas to establish that he was entitled to relief, he had the burden to establish malice on the part of the DCMS and the TMA. Malice requires knowledge that the allegation is false or reckless disregard for whether the allegation is false. *Maewal v. Adventist Health Sys./Sunbelt, Inc.*, 868 S.W.2d 886, 893 (Tex.App.—Fort Worth 1993, writ denied).

Ubiñas did not plead malice in the DCMS and TMA peer review process. Neither organization excepted to the pleadings. The DCMS and the TMA offered a jury issue that asked for a finding on whether the DCMS or the TMA acted with malice. The trial court refused to submit the issue. Ubiñas did not offer such an issue. Ubiñas had the burden to

prove malice to meet the threshold to establish a cause of action for, or to impose, civil liability. *See Agbor*, 952 S.W.2d at 509. Ubiñas had the duty to see that all essential elements entitling him to a cause of action were submitted to the jury. *Walker v. Comdata Network, Inc.*, 730 S.W.2d 769, 771 (Tex.App.—Dallas 1987), *dism'd*, 741 S.W.2d 927 (Tex.1988); *Cameron County v. Velasquez*, 668 S.W.2d 776, 781 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) (op. on reh'g); *see* TEX.R.CIV.P. 279. To impose liability under the Act required an affirmative finding on the issue of malice. When, as here, the plaintiff fails to request an issue, and an affirmative finding upon such omitted issue is essential to recovery, the trial court must render judgment for the defendant. *Walker*, 730 S.W.2d at 771; *Cameron County*, 668 S.W.2d at 781 (quoting *Bueno v. Globe Indem. Co.*, 441 S.W.2d 643, 648 (Tex.Civ. App.—Corpus Christi 1969, no writ)). Therefore, Ubiñas waived recovery by failing to request a finding on malice. *See* TEX.R.CIV.P. 279; *Emerald Forest Util. Dist. v. Simonsen Constr. Co.*, 679 S.W.2d 51, 54 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

### Open Courts Provision of the Texas Constitution

Ubiñas argues that enforcing the immunity provision unless he can prove malice would violate the open courts provision of the Texas Constitution. *See* TEX. CONST. art. I, § 13. This provision states: "All courts shall be open, and ev-

fied section provides immunity from civil liability for:

 a member, employee, or agent of the board, a medical peer review committee, or a medical organization committee, or a medical organization district or local intervenor, who takes an action or makes a recommendation within the scope of the functions of

the board, committee, or intervenor program, if that member, employee, agent, or intervenor acts without malice and in the reasonable belief that the action or recommendation is warranted by the facts known to that person; . . . .

TEX OCC.CODE ANN. § 160.010(a)(2).

ery person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." *Id.* The open courts provision affords three distinct protections. First, courts must actually be open and operating. *See Runge & Co. v. Wyatt,* 25 Tex.Supp. 291, 294 (1860). Second, citizens must have access to the courts unimpeded by unreasonable financial barriers. *See LeCroy v. Hanlon,* 713 S.W.2d 335, 342 (Tex.1986). Third, because our law must afford meaningful legal remedies to our citizens, the legislature may not abrogate the right to assert a well-established common law cause of action. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 448 (Tex. 1993); *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 355–57 (Tex.1990). The open courts provision "applies only to statutory restrictions of a cognizable common law cause of action." *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 499 (Tex.1995); *Moreno,* 787 S.W.2d at 355–56. Ubiñas complains about only the third protection.

 Generally, the open courts provision restricts the legislature's ability to withdraw all legal remedies from one having a cause of action well-established and well-defined in the common law. *Lebohm v. City of Galveston,* 154 Tex. 192, 195–96, 275 S.W.2d 951, 953 (1955). To demonstrate that a statute violates this constitutional guarantee, a litigant must show that, first, the statute restricts a well-recognized common law cause of action, and, second, the restriction is unreasonable or arbitrary when balanced against the purpose of the statute. *Agbor,* 952 S.W.2d at 508 (citing *Baptist Mem'l Hosp. Sys. v. Arredondo,* 922 S.W.2d 120, 121 (Tex.1996); *Moreno,* 787 S.W.2d at 355).

 First, although Ubiñas has couched this as a breach of contract claim, it is an action concerning a private association's decision-making powers regarding its membership. Traditionally, courts are not disposed to interfere with the internal management of a voluntary association. *Dickey v. Club Corp. of Am.,* 12 S.W.3d 172, 176 (Tex.App.—Dallas 2000, pet. denied) (citing *Harden v. Colonial Country Club,* 634 S.W.2d 56, 59 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.)). By becoming a member, a person subjects himself, within legal limits, to the organization's power to make and administer its rules. *Dickey,* 12 S.W.3d at 176; *Harden,* 634 S.W.2d at 59. A private, nonprofit organization has the right to manage, within legal limits, its own affairs without interference from the courts. *Dickey,* 12 S.W.3d at 176; *Butler v. Hide–A–Way Lake Club, Inc.,* 730 S.W.2d 405, 410 (Tex. App.—Eastland 1987, writ ref'd n.r.e.); *Harden,* 634 S.W.2d at 59; *Combs v. Tex. State Teachers Ass'n,* 533 S.W.2d 911, 913 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.). As long as a governing body does not decide a dispute by legislating a resolution instead of exercising judicial-type interpretation, does not transgress the bounds of reason, or contravene public policy, the courts cannot interfere. *Dickey,* 12 S.W.3d at 176; *Butler,* 730 S.W.2d at 410; *Harden,* 634 S.W.2d at 59. Thus, judicial review is proper only when the actions of the organization are illegal, against some public policy, or are arbitrary or capricious. *Dickey,* 12 S.W.3d at 176; *Butler,* 730 S.W.2d at 410; *Harden,* 634 S.W.2d at 60.

 Accordingly, a review of a private association's actions are severely limited under the common law in Texas. Courts have gone so far as to state that they will not review a private association's failure to conduct its business according to its own procedures except for the purpose of protecting some civil or property right. *Brotherhood of R.R. Trainmen v. Price,* 108 S.W.2d 239, 241 (Tex.Civ.App.—Gal-

veston 1937, writ dism'd w.o.j.); *Gaines v. Farmer,* 55 Tex.Civ.App. 601, 119 S.W. 874, 877 (Tex.Civ.App.1909, writ dism'd w.o.j.). In discussing the review of membership in a voluntary association, the Texas Supreme Court has stated:

A member of a voluntary association is bound by a sentence of expulsion against him lawfully rendered by a tribunal created in pursuance of its constitution, and clothed with that power. The rule also applies at least to such incorporated societies as are not organized principally for commercial gain. By uniting with the society, the member assents to and accepts the constitution, and impliedly binds himself to abide by the decision of such boards as that instrument may provide, for the determination of disputes arising within the association. The decisions of these tribunals, when organized under the constitution, and lawfully exercising these powers, though they involve the expulsion of a member, are no more subject to collateral attack for mere error than are the judgments of a court [of] law. But if the tribunal act illegally; if it declare a sentence of expulsion for an offense for which that penalty is not provided by the constitution and laws of the association; and if there be no right of appeal, within the association, reserved for the redress of the injury,—the courts will review the proceedings, and, if found illegal, will treat them as null, and restore the member to his privileges as such.... If his expulsion was illegal, and if the association had refused, upon appeal, to set it aside, it may be that this court would have granted redress.

*Screwmen's Benevolent Ass'n v. Benson,* 76 Tex. 552, 555, 13 S.W. 379, 380 (1890). Additionally, in a situation analogous to membership in a medical society, Texas cases have consistently held that the decisions of a governing board of a private hospital with regard to staff privileges are not subject to judicial review. *See Winston v. Am. Med. Int'l, Inc.,* 930 S.W.2d 945, 956 (Tex.App.—Houston [1st Dist.] 1996, writ denied); *Armintor v. Cmty. Hosp. of Brazosport,* 659 S.W.2d 86, 88–89 (Tex.App.—Houston [14th Dist.] 1983, no writ); *Tigua Gen. Hosp., Inc. v. Feuerberg,* 645 S.W.2d 575, 578 (Tex.App.—El Paso 1982, writ dism'd w.o.j.); *Hodges v. Arlington Neuropsychiatric Ctr., Inc.,* 628 S.W.2d 536, 538 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.); *Charter Med. Corp. v. Miller,* 605 S.W.2d 943, 951 (Tex.Civ. App.—Dallas 1980, writ ref'd n.r.e.); *see also Grossling v. Ford Mem'l Hosp.,* 614 F.Supp. 1051, 1058 (E.D.Tex.1985). These cases have held that a physician in this State has no cause of action against a private hospital for the termination of staff privileges, even when the action of the hospital was arbitrary and capricious or where common law rights to procedural or substantive due process were violated. *Tigua Gen. Hosp., Inc.,* 645 S.W.2d at 578; *Hodges,* 628 S.W.2d at 538–539; *Charter Med. Corp.,* 605 S.W.2d at 951.

We conclude that a breach of contract action to maintain membership in a private association is not a well-recognized or well-defined common law action in this state because of the doctrine of judicial non-intervention. *See Dickey,* 12 S.W.3d at 176–77; *Brotherhood of R.R. Trainmen,* 108 S.W.2d at 241. For Ubiñas to show this doctrine does not apply and maintain an action against a private association under the common law, he must meet a substantial threshold by showing that the organization's actions were illegal, involved some civil or property right, were against public policy, or were arbitrary or capricious. *Dickey,* 12 S.W.3d at 176; *Butler,* 730 S.W.2d at 410; *Harden,* 634 S.W.2d at 60. Thus, the requirements for judicial review are more than a mere

breach of its own policies. Significantly, Ubiñas's allegations are merely that the decision made by DCMS and TMA constituted a breach of contract and violated his due process rights. Thus, the common law does not provide a well-recognized remedy for the claims Ubiñas alleged.

■ We have observed that the threshold standards for bringing any recognized common law suit against a voluntary private association are substantial. However, the legislature has provided a different threshold standard, i.e., malice, for contesting the actions of private associations involved in medical peer review. Legislation violates article I, section 13 of the Texas Constitution and is a denial of due process if its effect is to unreasonably abrogate a recognized right of recovery without substituting other reasonable remedies. *Weibel v. Martin Indus., Inc.*, 806 S.W.2d 345, 346 (Tex.App.—Fort Worth 1991, writ denied). The substitution of malice in the case of medical peer review is reasonable in light of the other hurdles presented by the common law in pursuing actions concerning membership against a private voluntary association. The malice threshold promotes the public policy of having physicians review the actions of physicians and affording some protections for the organizations and the participants in those proceedings. Because we conclude that establishing a threshold standard of malice for reviewing a medical peer review proceeding is a reasonable substitute for the thresholds provided in Texas law for suit against a voluntary association for expulsion from membership, we hold this standard does not violate the open courts provision of the Texas Constitution.

Accordingly, we sustain appellants' sixth point of error and reverse the trial court's

judgment and render judgment against Ubiñas on his medical peer review complaints. Because our resolution of this point of error grants medical peer review immunity to the DCMS and the TMA for Ubiñas's claims, we need not address appellants' first through fifth and seventh through twelfth points of error.

## ATTORNEY'S FEES

### *DCMS and TMA*

■ In points of error thirteen through seventeen, appellants complain that the trial court erred in failing to award them attorney's fees. Specifically, in their seventeenth point of error, appellants contend the trial court erred by failing to submit a question inquiring whether Ubiñas's lawsuit was frivolous, unreasonable, without foundation, or brought in bad faith.

The DCMS and the TMA filed a counterclaim to recover attorney's fees under the Health Care Quality Improvement Act of 1986 (HCQIA), 42 U.S.C.A. § 11113 (West 1995), and section 5.06(p) of the Act, former TEX.REV.CIV.STAT.ANN. art. 4495b, § 5.06(p).[10] During the trial, the parties agreed to submit the amount of fees to the court. Appellants requested jury questions on the predicates to the award of fees. The court refused the submission. After the jury returned a verdict for Ubiñas, the trial court entered a judgment denying attorney's fees to the DCMS and the TMA as well as to Ubiñas.

■ An award of attorney's fees to the prevailing party is not mandatory under the HCQIA. *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641–42 (3rd Cir. 1996). The HCQIA provides that a substantially prevailing defendant "shall" re-

10. Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 18, 1987 Tex.Gen.Laws 2325, 2335 (repealed 1999) (current version at TEX. OCC.CODE ANN. § 160.008(c) (Vernon 2001)).

cover attorney's fees if the defendant has met certain standards established by the section 11112(a) [11] and if the claim or the plaintiff's conduct during the litigation of the claim "was frivolous, unreasonable, without foundation, or in bad faith." 42 U.S.C.A. § 11113. Whether a review action meets these standards is a fact issue. *See id.* § 11112(a); *Bryan,* 33 F.3d at 1323. Whether to award attorney's fees pursuant to section 11113 is a determination committed to the trial court's discretion. *Addis v. Holy Cross Health Sys. Corp.,* 88 F.3d 482, 486 (7th Cir.1996); *Muzquiz v. W.A. Foote Mem'l Hosp., Inc.,* 70 F.3d 422, 431–32 (6th Cir.1995). Further, the Act provides that a health care entity that is a defendant in a peer review civil action may file a counterclaim to recover attorney's fees "if the plaintiff's original action is determined to be frivolous or brought in bad faith." Former TEX.REV. CIV.STAT. ANN. art. 4495b, § 5.06(p).[12] Generally, bad faith is a question of fact. *See O'Shea v. Int'l Bus. Machs. Corp.,* 578 S.W.2d 844, 848 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

Because we have reversed the trial court's judgment and rendered judgment against Ubiñas on his complaints, the DCMS and the TMA are now the prevailing parties under the HCQIA, and they filed a counterclaim for attorney's fees as permitted by the Act. Whether the DCMS and the TMA are entitled to attorney's fees under either the HCQIA or the Act requires factual determinations. Because the DCMS and the TMA submitted proposed jury questions on the factual predicates for attorney's fees, we conclude the trial court abused its discretion by failing to submit the questions, and we sustain appellants' seventeenth point of error. Because of our disposition of this point, we need not address points of error thirteen through sixteen. We remand to the trial court the issue of whether appellants are entitled to attorney's fees.

### Ubiñas

In two cross-points, Ubiñas contends that the trial court erred or abused its discretion in denying his claim for attorney's fees pursuant to the Declaratory Judgment Act, TEX.CIV.PRAC. & REM. CODE ANN. § 37.009 (Vernon 1997), and by denying his requests for the court to determine the amount of those fees. Under the Declaratory Judgment Act, a trial court may award reasonable and necessary attorney's fees as are equitable and just. *Id.* "The granting or denial of attorney's fees in a declaratory judgment action is within the trial court's discretion." *Barshop v. Medina County Underground Wa-*

---

**11.** Section 11112(a) provides, as a standard, that a professional review action must be taken:

 (1) in the reasonable belief that the action was in the furtherance of quality health care,

 (2) after a reasonable effort to obtain the facts of the matter,

 (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

 (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C.A. § 11112(a). Section 11112(b) provides "safe harbor" procedures that satisfy the adequate notice and hearing requirement of subsection 11112(a)(3). *Id.* § 11112(b); *Bryan v. James E. Holmes Reg'l Med. Ctr.,* 33 F.3d 1318, 1323 (11th Cir.1994).

**12.** Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 18, 1987 Tex.Gen.Laws 2325, 2335 (repealed 1999) (current version at TEX. OCC.CODE ANN. § 160.008(c)).

*ter Conservation Dist.*, 925 S.W.2d 618, 637 (Tex.1996). Because we have reversed the trial court's judgment and rendered judgment for appellants on the merits and remanded the issue of their entitlement to attorney's fees to the trial court, we also remand the issue of Ubinas's entitlement to attorney's fees pursuant to the Declaratory Judgment Act. *See id.* at 637–38. Therefore, we need not address Ubiñas's cross-points.

## CONCLUSION

Having reversed the judgment of the trial court and rendered judgment against Ubiñas on his medical peer review complaints, we reinstate the DCMS's Disciplinary Order dated June 1, 1993 and the TMA's Opinion dated February 26, 1994.[13] We dissolve the injunction regarding Ubiñas's expulsion from the DCMS and the TMA and the dissemination of any report of sanctions imposed by the DCMS and the TMA with respect to the complaints and proceedings relating to Fleming, Fair, and Randle. Further, we reverse the trial court's judgment as to costs of court and the parties' claims for recovery of attorney's fees and remand those issues to the trial court for further proceedings.

---

**13.** The judgment states the opinion is dated February 28, 1994; the record shows the opinion is dated February 26, 1994.