**KEYSTONE INTERNATIONAL, INC, d/b/a Systems Engineering and Manufacturing Company, Appellant,**

**v.**

**R. H. INGHAM, d/b/a Ingham Associates, Appellee.**

**No. 8719.**

Court of Civil Appeals of Texas, Texarkana.

Dec. 18, 1979.

Rehearing Denied Jan. 22, 1980.

Robert Hayden Burns, William A. Sherwood, Butler, Binion, Rice, Cook & Knapp, Houston, for appellant.

Marcus E. Faubion, Houston, for appellee.

RAY, Justice.

This is a breach of contract case. Appellee (plaintiff), R. H. Ingham, d/b/a Ingham Associates (Ingham), brought suit against appellant (defendant), Keystone International, Inc., d/b/a Systems Engineering and Manufacturing Company (SEMCO), alleging that SEMCO breached a contract between the parties of which there was a memorandum in writing, for the payment of a sales commission. The case was tried with the aid of a jury and based upon the jury's verdict, the trial court entered judgment in favor of Ingham for commissions in the sum of $26,265.11, but the court disregarded the jury's answer to Special Issue No. 3 awarding $7,635.00 to Ingham for attorney's fees. SEMCO has perfected its appeal and submits five points of error for our consideration. Appellee submits one cross point for our consideration.

The judgment of the trial court will be affirmed.

Ingham is a manufacturer's representative residing in the State of Connecticut. In May of 1973, Ingham contacted SEMCO's Dennis Warnke in Houston relative to representing SEMCO. At that time, Warnke was SEMCO's manager of marketing and engineering and has since become president and general manager of the company. Warnke referred Ingham to SEMCO's northeast area district manager, Ron Luckjiff, who was headquartered in Totowa, New Jersey. Thereafter, Ingham met Luckjiff in New Jersey to discuss the development of a working relationship. An oral agreement was reached between the par-

ties. Subsequently, at Ingham's request, Luckjiff prepared and dispatched from his New Jersey office to Ingham in Connecticut, a letter dated July 16, 1973, reflecting and confirming the parties' commission agreement. The pertinent part of the letter provides the following:

> "This is to confirm that SEMCO will pay a 5% commission to Ingham Associates on all equipment sold to Nestle Company, Incorporated on our quotation No. 10272 and any other future approved projects you may work on in SEMCO's behalf."

The letter was signed by Ron Luckjiff for SEMCO.

The dispute concerning Ingham's claim to a commission arises out of certain work performed by him in behalf of SEMCO for the Nestle Company at Nestle's plant located at Freehold, New Jersey. It is undisputed that quotation No. 10272, the only project bid specifically referred to in the letter of July 16, 1973, was not accepted by Nestle. Quotation No. 10272 was for a *regular* green coffee bean pneumatic conveying storage system. This bid was SEMCO's proposal to Nestle which provided that SEMCO would furnish only SEMCO manufactured equipment without supplying any labor for installation of the system. Subsequently, Nestle forwarded to SEMCO, through its representative, Ingham, an "Invitation to Bidders" to submit further proposals regarding its project in Freehold, New Jersey. Thereafter, Nestle accepted SEMCO quotation No. 10828–4 which was for a *decaffeinated* green bean pneumatic conveying storage system. It is undisputed that this final bid went through several phases before a final agreement was reached between Nestle and SEMCO. The SEMCO bid provided for labor necessary to install the system, as well as containing certain non-SEMCO manufactured equipment. The total price of quotation No. 10828–4 was considerably higher than the bid price for quotation No. 10272. However, Robert Hoover, SEMCO's sales engineer, testified that the margin of profit was substantially smaller on bid No. 10828–4 because this proposal included the use of non-SEMCO manufactured equipment.

Hoover claimed that SEMCO's mark-up was lower because it had to use some equipment from an outside vendor. The lower mark-up resulted because SEMCO could not resell the equipment to the customer for more than the amount the customer could have bought it from the outside vendor.

The record shows that SEMCO made a partial payment to Ingham in the sum of $4,532.14, but no explanation was made as to how that figure was reached. Ingham claimed he was entitled to an additional $26,265.11 which was the balance of a 5% commission on all equipment sold in bid No. 10828–4. The total sales price of the equipment was $615,945.00 on which a 5% commission would be $30,797.25. By subtracting the $4,532.14 already received it would leave a balance due in commissions of $26,265.11, the exact amount awarded by the jury.

Dennis Warnke, now president and general manager of SEMCO testified that the job was sold, at least in part, through the sales efforts of Mr. Ingham; that SEMCO paid Ingham commissions of $4,532.14; that SEMCO does owe Ingham some more commissions; that the dispute really goes to the amount owed; and that SEMCO had tendered to Ingham a check for $12,549.26 as the amount SEMCO believed constituted full payment. This check was refused by Ingham.

Ingham's Exhibit No. 7, a Semco shipment invoice to Nestle for $79,494.00, indicates that SEMCO believed it owed Ingham a 5% commission on the total amount of equipment shipped pursuant to that invoice. The invoice provided that Ingham's commission was to be $3,974.70, exactly 5% of the price of the equipment shipped to Nestle.

■ The only evidence in writing of the agreement between the parties was the letter of confirmation which provided for a 5% commission. It was logical for the jury to have concluded that the 5% commission figure was determined by the negotiations leading to the confirmation letter of July 16, 1973. The letter, plus Warnke's testimony, clearly supports the jury finding that

bid No. 10828–4 was a "future project" approved by SEMCO.

We have examined the letter and its wording in light of the surrounding circumstances and it seems clear to us that when quotation No. 10272 was not accepted by Nestle, that Ingham went to work to get bid No. 10828–4 accepted by Nestle. The jury found that Ingham was a procuring cause of the acceptance of bid No. 10828–4 and that quotation No. 10828–4 was a "future project" contemplated in the letter of July 16, 1973. In answer to requests for admissions, SEMCO admitted that it owed Ingham an additional sum of money for his commission on the sale of equipment to the Nestle Company on the project at Freehold, New Jersey. The amount owed was based on a 5% commission, the only commission mentioned in the July 16, 1973, letter. The plain meaning of the words in the letter combined with the circumstances surrounding the Nestle project, make it clear that SEMCO had agreed to pay a 5% commission on all equipment sold to the Nestle Company, whether manufactured by SEMCO or not. 13 Tex.Jur.2d Contracts § 113 (1960); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968); *Gulf Oil Corporation v. Spence & Howe Construction Co.*, 356 S.W.2d 382 (Tex.Civ.App. Houston 1962), *affirmed*, 365 S.W.2d 631 (Tex.1963).

SEMCO contends that the July 16, 1973, letter, as it concerns bid No. 10828–4, was nothing more than an agreement to make a future contract. We reject this argument and hold to the contrary.

 SEMCO insists that the agreement confirmed by the letter is unenforceable as a contract because it was not to be performed within one year from the date of its making, but at best was a future contract. The argument of SEMCO is that the Texas Statute of Frauds, Tex.Bus. & Comm.Code Ann. § 26.01 (1968), applies because Ingham testified that the Nestle project would "probably take more than a year to build." The authorities do not support appellant's position. As a general rule, to fall within the statute of frauds and be

unenforceable ". . . the agreement must be one of which it can truly be said at the very moment it is made, 'This agreement is not to be performed within one year'; in general the cases indicate that there must not be the slightest possibility that it can be fully performed within one year. . . . It makes no difference how long the parties expect performance to take or how reasonable and accurate those expectations are, if the agreed performance can possibly be completed within a year. . . ." 2 Corbin on Contracts § 444, p. 535 (1950). The Texas cases are consistent with this reasoning. In *Hall v. Hall*, 158 Tex. 95, 308 S.W.2d 12 (1958), our Supreme Court held that, ". . . in order to fall within the statute, it must appear from the terms of the contract that performance cannot be completed within one year. . . . A corollary to the foregoing is that where the term of performance is uncertain in the sense that the contract merely provides for the performance of a particular act or acts, such as the building of a house, which can conceivably be performed within one year, the statute does not apply, however improbable performance within one year may be. . . ." See *Miller v. Riata Cadillac Company*, 517 S.W.2d 773 (Tex.1974); *Wright v. Donaubauer*, 137 Tex. 473, 154 S.W.2d 637 (1941).

In the present case, we have concluded that the letter satisfies the Statute of Frauds, § 26.01, supra. *Adams v. Abbott*, 151 Tex. 601, 254 S.W.2d 78 (1952); *Toland v. Azton*, 553 S.W.2d 433 (Tex.Civ.App. San Antonio 1977, no writ).

We do not believe that the testimony of Ingham that the project would "probably take more than a year" is conclusive evidence that the contract could not be performed within one year.

 SEMCO complains that the trial court erred in refusing to submit a proper special issue as to whether or not bid No. 10828–4 was approved by SEMCO as a "future project" and in failing to submit a proper explanatory instruction following the issue. It is contended by SEMCO that a proper special issue should have inquired as

to an agreement subsequent to the July 16, 1973, letter. A special issue drafted by SEMCO was submitted to the court along with an explanatory instruction pursuant to Tex.R.Civ.P. 279. SEMCO's argument is premised on the assumption that Ingham can recover a commission as to quotation No. 10828–4 if, and only if, there existed an agreement subsequent to the one confirmed by the letter of July 16, 1973. We find no merit in appellant's argument because we have construed the letter of July 16, 1973, as reflecting the complete agreement previously reached orally. The only subsequent action required was approval of the Nestle project on which Ingham was working and the jury resolved the facts in favor of Ingham in answer to the special issues submitted to them by the court. The jury could have inferred such approval from SEMCO's conduct and its admission that it owed Ingham more money. The trial court properly refused to submit the special issue tendered by SEMCO as well as the explanatory instruction. "The only function of an explanatory instruction in the charge is to aid and assist the jury in answering the issues submitted. . . . The only requirement to be observed is that the trial court must give definitions of legal and other technical terms. Nothing else, however interesting, or, indeed, however relevant to the case in general, which does not aid the jury in answering the issue, is required. . . . The trial court has considerably more discretion in submitting instructions in this area than it has in submitting special issues. . . ." *First State Bank & Trust Co. of Edinburg v. George*, 519 S.W.2d 198 (Tex.Civ.App. Corpus Christi 1974, writ ref'd n. r. e.). See also Hodges, Special Issue Submission In Texas, §§ 8 & 10, pp. 25, 29–30 (1959); 3 McDonald's, Texas Civil Practice, § 12.14.2; § 12.14.3; *French v. Brodsky*, 521 S.W.2d 670 (Tex.Civ.App. Houston-1st Dist. 1975, writ ref'd n. r. e.).

In appellee's single cross point he seeks to recover the attorney's fees which the trial court disallowed. Ingham contends that Article 2226, Tex.Rev.Civ.Stat. Ann., permits recovery of attorney's fees in suits based upon written contracts. However, the oral contract entered into by the parties in New Jersey became the complete agreement at that time as to the payment of sales commissions to Ingham. Thus, the law of New Jersey applies and it denies recovery of attorney's fees under Rule 4:42–9, New Jersey Rules of Civil Procedure. Appellant had only requested the trial court to take judicial notice of New Jersey law as it applied to attorney's fees and the trial court applied the New Jersey law pursuant to Tex.R.Civ.P. 184a. Appellant did not request the trial court to take judicial notice of the New Jersey law as being applicable to the merits of the case and thus Texas law was applied. *Harris v. Harris*, 403 S.W.2d 445 (Tex.Civ.App. Houston 1966, writ ref'd n. r. e.); *Utica Mutual Insurance Co. v. Bennett*, 492 S.W.2d 659 (Tex.Civ.App. Houston-1st Dist. 1973, no writ). Appellee's cross point is overruled.

We have concluded that the evidence supports the trial court's judgment and it is accordingly affirmed.