In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00124-CV
______________________________


KEVIN HAMILTON, Appellant
Â 
V.
Â 
SECURITY STATE BANK, N. A., Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 334-05


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Security State Bank, N. A. (Security) sued Kevin Hamilton claiming he had defaulted on a
promissory note. The trial court rendered a default judgment in favor of Security. Hamilton appeals
that judgment. We reverse the judgment of the trial court and remand for further proceedings
because we hold the trial court erred in rendering the default judgment.



Â Â Â Â Â Â Â Â Â Â Â Â The trial court's default judgment states, "[T]he Defendant, Kevin Hamilton, has failed to
appear and answer within the time prescribed by law and has wholly made default." Reviewing the
record before us, we find that Hamilton filed an answer before the entry of the court's judgment, but
there is no evidence he was notified of the default judgment hearing. Therefore, the trial court erred
by entering a default judgment.
Â Â Â Â Â Â Â Â Â Â Â Â Security filed its original petition June 7, 2005. Hamilton was served with process JulyÂ 16,
2005. On August 8, 2005, Hamilton filed a response to Security's petition. On September 5, 2005,
Security filed a motion for default judgment asserting that Hamilton had "wholly made default." The
trial court entered the default judgment September 8, 2005.
Â Â Â Â Â Â Â Â Â Â Â Â Where a defendant has filed an answer, default judgment is improper, even if the defendant
fails to appear at trial. Parrish v. Rutherford, 159 S.W.3d 114, 116 (Tex. App.âCorpus Christi
2004, no pet.); see Tex. R. Civ. P. 239. Further, it is error to render judgment by default when a plea
is on file, even if the plea is defective. Reitmeyer v. Charm Craft Publisher, 619 S.W.2d 441 (Tex.
Civ. App.âWaco 1981, no writ). Hamilton's filed response is entitled "Counter Claim." At the top
of the document are the names of the parties, the trial court cause number, and the title of the district
court in which the case was pending. The body of the document makes it clear that Hamilton is
aware of the nature of the case against him, gives some response to the plaintiff's petition, and
attempts to assert a counterclaim against Security.
Â Â Â Â Â Â Â Â Â Â Â Â Although Hamilton's plea was not in the standard form of an answer, it nevertheless gave the
court a timely response acknowledging receipt and acceptance of Security's citation and petition. 
In re K.B.A., 145 S.W.3d 685, 691 (Tex. App.âFort Worth 2004, no pet.) (citing see Smith v.
Lippmann, 826 S.W.2d 137, 138 (Tex. 1992); see also Santex Roofing Sheet Metal, Inc. v. Venture
Steel, Inc., 737 S.W.2d 55, 56 (Tex. App.âSan Antonio 1987, no writ) (holding Texas courts have
always been reluctant to uphold default judgment without notice where some response from
defendant is found in the record)). Hamilton's filing constituted an appearance in the matter and
entitled him to notice of further proceedings in the case. See Lippmann, 826 S.W.2d at 138 (holding
timely-filed pro se letter from defendant identifying parties, case, and defendant's current address
was sufficient answer to defeat default judgment).


 There is no evidence in the record that Hamilton
was notified of the default judgment hearing.
Â Â Â Â Â Â Â Â Â Â Â Â The record shows that Hamilton appeared by answer before the rendition of the default
judgment, but includes no evidence that he received notice of the hearing. Therefore, Hamilton is
entitled to a new trial. 
Â Â Â Â Â Â Â Â Â Â Â Â We reverse the judgment of the trial court and remand for further proceedings consistent with
this opinion.
Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â February 2, 2006
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â February 22, 2006




ccent 4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00047-CV

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  CALVIN MONASCO,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  GILMER BOATING AND FISHING CLUB, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 115th
Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Upshur County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial
Court No. 748-07

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Opinion by Justice Carter








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  O P I N I O N

Â 

I. Â Â Â Â Â Â Â  Â BACKGROUND AND PROCEDURAL POSTURE

Â 

Â Â Â Â Â Â Â Â Â Â Â  The Gilmer
Boating and Fishing Club (the Club) is a private, unincorporated association[1]Â  located in Upshur County, formed for the
purpose of Âconducting and maintaining the same as a pleasure resort for the
benefit of its members and their families and friends while promoting good
environmental practices.ÂÂ  The Club has
thirty shares of stock, apparently a majority of which were issued to charter
members of the organization. Â Bylaws for
the government of the Club, adopted by the shareholders, provide that a
prospective Club member must be approved for membership by the board of
directors before he or she is permitted to purchase a share of the ClubÂs
stock.Â  Club membership is granted on a
vote of seven board members.Â  

Â Â Â Â Â Â Â Â Â Â Â  At
a meeting of the ClubÂs board of directors in June 2005, Club member David Monk
proposed that he be permitted to sell his share of stock in the Club to
Monasco.Â  The proposal was approved, and
Monasco was approved for Club membership at this meeting.Â  Together with the share purchased from Monk,
Monasco also purchased MonkÂs lake house located on Club property.Â  Prior to the vote approving MonascoÂs Club
membership, Monasco was asked if he read and understood the ClubÂs bylaws,
which are binding on shareholders.Â 
Monasco indicated that he read and understood the Club bylaws.Â  Article IV, Section 5 of the bylaws provides:

Only members themselves may reside on Club property.Â  It is expressly forbidden that buildings or
property be rented or used by non members.Â 
Non members shall include adults within a Club memberÂs own family
except his/her spouse.Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  In spite of
this provision, MonascoÂs brother, Larry Monasco, has been living with Monasco
at his lake house, together with MonascoÂs adult son, Ace Monasco.Â  Larry took up residence with Monasco after
the sale and continued to live with Monasco almost two years hence.Â  Unhappy with this state of affairs, the Club
filed a declaratory judgment action, asking the court to declare the bylaws to
be an enforceable contract between the Club and Monasco, which prohibit Monasco
from permitting Larry, or any other adult person not the spouse of Monasco,
from residing on the property.Â  In
addition, the Club asked the court to enjoin Monasco from permitting Larry, or
any other adult person not the spouse of Monasco, from residing on the property.Â  After a bench trial, the trial court entered
judgment granting the requested relief and filed findings of fact and
conclusions of law.Â  

II. Â Â Â Â Â  ANALYSIS

Â 

Â Â Â Â Â Â Â Â Â Â Â  Monasco
disputes the legal and factual sufficiency of the evidence to support the trial
courtÂs finding that he is bound by Article IV, Section 5 of the ClubÂs bylaws,
which prohibits any adult person not his spouse from residing on Club
property.Â  This finding is based on the
premise that the ClubÂs bylaws are an enforceable contract between Monasco and
the Club.Â  Monasco claims that he is not
bound by the bylaws because there is no signed, written document indicating his
assent to be so bound.Â  Therefore,
Monasco claims the trial court erred in failing to apply the statute of
frauds.Â  The trial court found that
Monasco merely purchased personal property and, therefore, concluded that the
statute of frauds was not applicable to this transaction.Â  Finally, Monasco claims that even if he
purchased only personal property, the statute of frauds nevertheless applies
because performance of the contract could not be accomplished within one
year.Â  We affirm the judgment of the
trial court.Â  

Â Â Â Â Â Â Â Â Â Â Â  A. Â Â Â Â Â  Reviewing
Evidentiary Sufficiency 

Â 

Â Â Â Â Â Â Â Â Â Â Â  An appellate court conducts a
legal and factual sufficiency review of a trial courtÂs findings by the same
standards applied when reviewing evidence supporting a juryÂs verdict. Â Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Long v. Long, 196 S.W.3d 460, 464 (Tex.
App.ÂDallas 2006, no pet.).Â  Findings of
fact entered in a case tried to the court are of the same force and dignity as
a juryÂs answers to jury questions.Â  Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996).Â  

Â Â Â Â Â Â Â Â Â Â Â  In reviewing
a legal sufficiency complaint of an adverse finding on which the appellant did
not have the burden of proof, the appellant must demonstrate on appeal that no
evidence supports the adverse finding.Â  Croucher v. Croucher, 660 S.W.2d 55, 58
(Tex. 1983); Cendant Mobility Servs.
Corp. v. Falconer, 135 S.W.3d 349, 352 (Tex. App.ÂTexarkana 2004, no pet.).Â  We will sustain such a challenge only when
the record discloses:Â  (1) a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere scintilla
of evidence; or (4) the evidence established conclusively the opposite of a
vital fact. Â Merrell Dow Pharms. v.
Havner, 953 S.W.2d 706, 711
(Tex. 1997) (citing Robert W. Calvert, ÂNo
EvidenceÂ and ÂInsufficient EvidenceÂ Points of Error,
38 Tex. L. Rev. 361, 362Â63
(1960)).Â  If the evidence furnishes some
reasonable basis for differing conclusions by reasonable minds about a vital
factÂs existence, more than a scintilla of evidence exists.Â  Burroughs Wellcome v. Crye, 907 S.W.2d 497, 499 (Tex. 1995).

Â Â Â Â Â Â Â Â Â Â Â  When
challenging the factual sufficiency of the evidence supporting an adverse
finding on which the appealing party did not have the burden of proof, the
appellant must demonstrate that there is insufficient evidence to support the
adverse finding.Â  Barnett v. Coppell N. Tex. Court, Ltd., 123 S.W.3d 804 (Tex. App.ÂDallas 2003, pet. denied).Â  The evidence is sufficient to support the
adverse finding if the evidence is such that reasonable minds could differ on
the meaning of the evidence, or the inferences and conclusions to be drawn from
the evidence.Â  Falconer, 135 S.W.3d at 352.Â 
A challenge to the factual sufficiency of the evidence will be sustained
if the evidence is so weak or the verdict is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust.Â  Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986).

Â Â Â Â Â Â Â Â Â Â Â  B.Â  Â Â Â Â  The Contract

Â 

Â Â Â Â Â Â Â Â Â Â Â  Monasco maintains that the Club
lacked the authority to enforce the provisions of its bylaws against him.Â  While the parties did not brief the issue of
whether a contract existed between the Club and Monasco, a complete
understanding of the basis of the trial courtÂs judgment[2]
necessitates a discussion of this issue.Â 
In fact, the Club specifically asked the trial court to declare that the
Club bylaws are an enforceable contract between the Club and its members.Â  In finding that Monasco is bound by the Club
bylaws, the trial court implicitly found the bylaws to be a part of a binding
contract or agreement between the Club and Monasco.Â  

Â Â Â Â Â Â Â Â Â Â Â  The
testimony regarding the agreement between the Club and Monasco revealed that
Club member David Monk proposed that he be permitted to sell his share of stock
in the Club to Monasco.Â  Article IV, Section
1 of the bylaws provides:

All persons wishing to buy or become the owner
of a share of stock herein shall be voted on for membership privileges by the
board of directors and officers and must pass a ballot of at least seven votes
before being admitted to membership.Â 
Shares of stock may not be fractionalized and each share must show the
name of only one person.Â  No person shall
own more than one (1) share of stock.

Â 

At a meeting in June 2005, Club members voted on whether
Monasco would be admitted as a Club member via the purchase of MonkÂs share of
stock.Â  Prior to the vote, there was a
discussion regarding Article IV, Section 5 of the bylaws, which provides:

Only members themselves may reside on Club
property.Â  It is expressly forbidden that
buildings or property be rented or used by non members.Â  Non members shall include adults within a
Club memberÂs own family except his/her spouse.Â 


Â 

Â Â Â Â Â Â Â Â Â Â Â  Monasco
testified that he told Club president Robert Brown, at the June 2005 meeting,
that he wanted his disabled brother to reside with him at the lake house
(located on Club property) that he intended to purchase from Monk.Â  Monasco also told Brown that he had three
adult children and that they would always be welcome to live with him if they
were in need of a place to live.Â  The
response he received from Brown was not an affirmance, but a questionÂwas
Monasco familiar with the bylaws?Â 
Monasco indicated that he had read and understood the bylaws.Â  Indeed, the minutes of the June 2005 meeting
state: Â ÂCalvin wanted to know if there
would be any objection with his brother living with him until he finished
renovating the house.Â  The Club had no
objections as long as it was only temporary and not permanent.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  Jerry
Johnson, also a board member present at the June 2005 meeting, testified that
Monasco never told the board members at the meeting that he intended for Larry
to live with him permanently.Â  Monasco would
not have been approved for Club membership if he indicated he did not intend to
be bound by the bylaw restricting residency on Club premises.Â  It is undisputed that Monasco was never asked
to sign a written agreement wherein he agreed to abide by the bylaws, and in
particular, that section which prohibits an adult nonspouse family member from
living with a member on Club property.Â 
Monasco testified that if he had been asked to sign such an agreement,
he would not have become a member of the Club.Â 


Â Â Â Â Â Â Â Â Â Â Â  Monk,
also present at the June 2005 meeting, testified that Monasco never indicated
that his purchase of the property was contingent on LarryÂs ability to live
with him.Â  Such a statement would have
been significant and would have been recorded in the minutes of the meeting by
Monk, who was the Club secretary at the time.Â 
Ultimately, the Club approved the sale of the share and the lake house
from Monk to Monasco.[3]Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  Texas courts
have recognized that association bylaws may constitute a contract between the
parties.Â  Lundine v. McKinney, 183 S.W.2d 265, 273 (Tex. Civ. App.ÂEastland
1944, no writ) (articles of association and bylaws agreed on by the parties
constitute a contract which the courts will enforce both as between the members
themselves and as between the association on the one side and the individual
members on the other, citing 7 C.J.S., Associations,
Â§ 11, p. 36); Brown v. Harris County Med.
Soc., 194 S.W. 1179, 1180 (Tex. Civ. App.ÂGalveston 1917, no writ)
(association rules which regulate conduct and measure rights constitute
articles of agreement to which all who have become members are parties and are
governed in their relations to such associations); Gaines v. Farmer, 55 Tex. Civ. App. 601, 119 S.W. 874, 877 (1909)
(association bylaws are contract of members with each other, and by them their
rights as members are to be determined); see
also Cline v. Ins. Exch. of Houston,
140 Tex. 175, 166 S.W.2d 677 (1942) (voluntary association has power to enact
rules governing admission of members and prescribing certain qualifications for
membership; such rules will be enforced, unless they are against good morals or
violate state law).

Â Â Â Â Â Â Â Â Â Â Â  The trial
courtÂs finding that Monasco was bound by Article IV, Section 5 of the bylaws[4]
implicitly recognizes (as sought in the petition for declaratory judgment) a
binding contract between Monasco and the Club.[5]Â  The evidence is both legally and factually
sufficient to support the trial courtÂs finding that Monasco was contractually
bound by the Club bylaws.Â  Monasco
claims, however, that because there was no signed agreement to be bound by the
bylaws, the statute of frauds applies here and the trial court erred in
determining otherwise. Â 

Â Â Â Â Â Â Â Â Â Â Â  The key to
this determination depends on the nature of the property purchased.Â  Monasco contends he purchased real property,
thus necessitating application of the statute of frauds.[6]Â  The Club contends Monasco merely purchased personal
property and thus the statute of frauds does notÂ apply.Â  The trial court found that Monasco purchased
personal property only.Â  

Â Â Â Â Â Â Â Â Â Â Â  C. Â Â Â Â Â  Monasco
Purchased Personal Property

Â 

Â Â Â Â Â Â Â Â Â Â Â  In its finding of
fact number two, the trial court indicated that Â[M]embers of the Club own a
share in the Club and the right to occupy the cabins and to enjoy the rights of
membership in the Club.Â  Ownership of the
land is held by the Club.ÂÂ  Monasco does
not dispute the fact that he purchased a share in the Club.Â  He contends, however, that he purchased a
cabin, and not merely the right to occupy a cabin.Â  Monasco contends the cabin so purchased was
real, not personal, property.Â  Here,
there is ample evidence that Monasco purchased a share in the Club, as well as
a cabin.Â  That evidence does not, however,
render the trial courtÂs finding number two legally or factually
insufficient.Â  

Â Â Â Â Â Â Â Â Â Â Â  The
Club bylaws state that when a share in the Club is purchased, that share comes
with cabin privileges.Â  Article IV, Section
2 of the bylaws states: ÂONLY MEMBERS
CAN INVITE GUESTS, USE CLUB GROUNDS, ERECT OR MOVE CABINS OR OTHER STRUCTURES
ON CLUB PROPERTY OR USE CLUB WATER WELL.ÂÂ  Article IV, Section 4 of the bylaws states: Â[O]NLY MEMBERS SHALL HAVE THE PRIVILEGE
OF BUILDING A DWELLING ON CLUB
PROPERTY.Â  . . . ANY HOUSE OR STRUCTURE
TO BE ERECTED OR MOVED ONTO CLUB PROPERTY MUST BE APPROVED BY THE BOARD OF
DIRECTORS.ÂÂ  These provisions
indicate that one who purchases a share in the Club may erect or move a cabin
with the approval of the board of directors.Â 
Monasco attacks finding number two because, as he states, it is contrary
to the evidence.Â  Finding number two,
insofar as it states that members in the Club own a share in the Club and the
right to occupy the cabins and then enjoy the rights of Club membership, merely
recognizes the validity of Article IV, Sections 2 and 4 of the Club
bylaws.Â  There is no evidence in the
record before this Court that contradicts this portion of the trial courtÂs
second finding of fact.Â  Even though the
finding of fact is accurate, it is also undisputed that Monasco actually
purchased and owns the cabin.Â  

Â Â Â Â Â Â Â Â Â Â Â  The final
sentence in finding of fact number two indicates Âownership of the land is held
by the Club.ÂÂ  This finding indicates
that Club members own the actual cabins, but do not own the land on which they
are situated.Â  From this, Monasco reads
the entire finding to mean that he did not purchase a cabin, but merely the
right to occupy the cabin.Â  There is no
factual finding that Monasco did not own the cabin.Â  Indeed, there is ample evidence that Monasco
purchased a cabin.Â  Brown testified that
Monasco asked the board to approve his request to purchase property (the lake
house) from Monk.Â  This request was
approved.Â  A bill of sale was prepared
and executed documenting the purchase by Monasco from Monk of:Â  

The following described personal property
to-wit:

Â 

House located on Lot H of Twin Lakes with the
property address of 1044 PR 1130, Gilmer, Texas 75645, together with membership
in Twin Lakes.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Also in
connection with this sale, a financing statement was executed and signed by
Monasco in accordance with the Uniform Commercial Code.Â  Each of these documents was filed of record
with the Upshur County Clerk on June 29, 2005.Â 
Both Monk and Monasco testified that Monasco purchased the lake house
from Monk.Â  This evidence is
undisputed.Â  

Â Â Â Â Â Â Â Â Â Â Â  That portion
of finding of fact number two stating Âownership of the land is held by the
ClubÂ is disputed.Â  If the land on which
the lake house is situated is owned by the Club, the character of the lake
house as personal, as opposed to real property, is implicated.Â  That is MonascoÂs core complaint.Â  In this regard, Brown testified that when a
share in the Club is purchased, it means that the shareholder owns
one-thirtieth of the real estate because there are only thirty shares of Club
stock.Â  Earlier, Brown testified that
when a Club member purchases a share of stock, they do not acquire any land
ownership.Â  Brown testified the Club owns
all of the land. Â In fact, Article IV, Section
4 of the bylaws refers to building a cabin ÂON CLUB PROPERTY.ÂÂ  Monk testified that the owner of a lake house
on Club property only pays property taxes on the house, not on the land on
which it is situated.Â  The Club pays property
taxes on the land and owns the land.Â  

Â Â Â Â Â Â Â Â Â Â Â  This
evidence is sufficient to provide a reasonable basis for differing conclusions
by reasonable minds regarding ownership of the land on which the lake house
purchased by Monasco is situated.Â 
Accordingly, this evidence is legally sufficient to support the trial
courtÂs finding that Âownership of the land is held by the Club.ÂÂ  See
Crye, 907 S.W.2d at
499.Â  Further, we cannot conclude that
the evidence in support of land ownership by the Club is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.Â  We, therefore, find the evidence in this
regard to be factually sufficient.Â  See Cain,
709 S.W.2d at 176.Â  The trial courtÂs
finding of fact number two is, in its entirety, supported by sufficient
evidence. 

Â Â Â Â Â Â Â Â Â Â Â  Monasco
further complains of the trial courtÂs conclusion of law number three, which
provides:Â Â  

The Statute of Frauds do [sic] not apply to the
transaction by and between David Monk and CALVIN MONASCO in that the same was
not a real property transaction, but a personal property transaction as
described in the Bill of Sale (Exhibit P-3).Â 
As such, there is no requirement for the inclusion of a restrictive
covenant in the Bill of Sale of the sort normally included in Deeds, nor is
there any requirement for the contract of purchase to be performable within one
year.Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  Monasco
complains that the trial court erred in concluding that his purchase of the
cabin was merely the purchase of personal property.Â  A trial courtÂs conclusions of law are
reviewable to determine whether the law was incorrectly applied to the facts.Â  BMC
Software Belgium, NV v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); Heritage Res., Inc. v. Hill, 104 S.W.3d 612, 621 (Tex. App.ÂEl Paso 2003, no
pet.).Â  Conclusions of law are reviewed
de novo as legal questions.Â  Marchand, 83 S.W.3d at 794.Â  If the reviewing court determines a
conclusion of law is erroneous, but the trial court rendered a proper judgment,
the erroneous conclusion of law does not require reversal.Â  Id.Â  

Â Â Â Â Â Â Â Â Â Â Â  Monasco
argues that because the evidence is undisputed he purchased a cabin from Monk,
it necessarily follows that this was the purchase of real property.Â  He claims that with the possible exception of
mobile homes, Texas courts consider houses to be real property.[7]Â  In support of his contention, Monasco relies
on cases citing general propositions of law regarding the nature of real and
personal property.Â  The Texas Supreme
Court has defined real property as Âland, and generally whatever is erected or
growing upon or affixed to land.ÂÂ  San Antonio Area Found. v. Lang, 35
S.W.3d 636, 640 (Tex. 2000).Â  Personal
property is defined broadly to include everything that is subject to ownership
not falling under the definition of real estate.Â  Id. Â ÂA structure affixed to the land, like a
bridge or a building . . . cannot be tangible personal property.ÂÂ  Guadalupe-Blanco
River Auth. v. Pitonyak, 84 S.W.3d 326, 336 (Tex. App.ÂCorpus Christi 2002,
no pet.).Â  Monasco cites additional cases
which generally refer to houses as Âreal property,Â wherein the nature of the
property is not in issue.Â  While these
cases recognize general propositions of law regarding real property, they do
not specifically address the issue of whether a house affixed to the land can
ever be considered personal, as opposed to real, property.Â  

Â Â Â Â Â Â Â Â Â Â Â  True, the
general rule is that improvements become part of the land to which they are
affixed.Â  However, the general rule does
not apply when there is evidence showing intent of the improver that the
improvements remain personalty with the right to be removed.Â  Travis
Cent. Appraisal Dist. v. Signature Flight Support Corp., 140 S.W.3d 833,
838 (Tex. App.ÂAustin 2004, no pet.).Â 
So, although improvements usually become part of the land, parties may
agree that those improvements are personalty.Â 
See Dennis v. Dennis, 256
S.W.2d 964, 966 (Tex. Civ. App.ÂAmarillo 1952, no writ) (absent agreement,
sonÂs house moved onto land owned by his mother became permanently affixed and
belonged to mother); Lindsley v. Lewis,
125 Tex. 630, 84 S.W.2d 994, 995Â96 (1935) (landownerÂs oral agreement that
brother could construct home and live on land did not give brother any interest
in improvements); Williamson v. Pye,
18 S.W.2d 707 (Tex. Civ. App.ÂBeaumont 1929, no writ) (son built house on
fatherÂs property with permission and with understanding that house belonged to
son; even though house was not built with intention of moving it from fatherÂs
land, house nevertheless remained personal property of son); see also Armstrong v. Mission Indep. Sch.
Dist., 195 S.W. 895, 896 (Tex. App.ÂSan Antonio 1917), revÂd on other grounds, 222 S.W. 201 (Tex. CommÂn App. 1920)
(improvements placed on land by lessee with agreement it could be removed was
personal property of lessee); Clayton v.
Phillip, 159 S.W. 117 (Tex. Civ. App.ÂFort Worth 1913, no writ) (purchaser
of lot did not acquire rights to house located on that lot, as house
constituted personal property of another pursuant to agreement between previous
owner and owner of house).Â  To avoid
application of the general rule, a contrary intent must be clearly established:

Everyone knows that in many cases that have been
before the courts men erect structures and even very valuable improvements on
lands of another under contracts, agreements, and evident intentions that such
improvements shall never be a part of the land and never become the property of
the land owner.Â  When such conditions
arise the improvements do not become real property but remain personal.Â  

Â 

Rogers v. Fort Worth
Poultry & Egg Co., 185 S.W.2d 165, 167 (Tex. Civ. App.ÂFort Worth 1944,
no writ) (upholding plea of privilege when evidence failed to establish Rogers
owned the land on which his store was situated).Â  This rule was also recognized in the earlier
case of Meers v. Fick-Reid Supply Corp.,
127 S.W.2d 493, 496 (Tex. Civ. App.ÂAmarillo 1939, writ dismÂd) (property
affixed to land of another under license from owner is personal property).

Â Â Â Â Â Â Â Â Â Â Â  Here,
Monasco is claiming the lake house he purchased from Monk is real rather than
personal property.Â  In concluding
otherwise (and thus finding the statute of frauds does not apply to this
transaction), we must determine if the trial court correctly applied the law to
the facts.Â  The facts indicate that the
cabin was purchased pursuant to a bill of sale in which it was specifically
classified as Âpersonal property.ÂÂ 
Further, a financing statement (form UCC 1) was executed and filed in
the office of the Upshur County Clerk.Â  A
financing statement is filed for the purpose of perfecting a security interest
in personal property in the possession of the debtor.Â  Crow-Southland
Joint Venture No. 1 v. N. Fort Worth Bank, 838 S.W.2d 720, 723 (Tex.
App.ÂDallas 1992, writ denied).Â  A
security interest is Âan interest in personal property or fixtures which
secures payment or performance of an obligation.ÂÂ  Tex.
Bus. & Com. Code Ann. Â§ 1.201(b)(35) (Vernon 2009).Â  Brown, president of the Club at the time of
the sale, testified that the Club owns all of the land, and Club members do not
acquire land ownership when purchasing a share of Club stock.Â  Monk testified that he understood the cabin
and share of Club stock sold under the bill of sale was personal property.Â  Monk further testified that the land is owned
by the Club and the Club pays the property taxes on the land.Â  Rather than describing a conveyance of a
particular tract of real estate, the bill of sale described the purchase as a
Âhouse located on Lot H of Twin Lakes . . . together with membership in Twin
Lakes.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  Monasco
failed to present any evidenceÂother than to establish the cabin is affixed to
the landÂthat the cabin he purchased was real property.Â  The Club recognized the sale of the cabin as
one of personal property, as the Club owned the land on which the cabin was
situated.Â  While this case does not fit
strictly within the exception to the rule that houses affixed to the land are
generally considered to be real property, the evidence here establishes that
the Club and Monk understood the cabin to be personal property.Â  Even though Monasco contends the cabin to be
real property, his signature on the bill of sale designating same as personal
property indicates that he was at least aware of the fact that the cabin was
characterized as personal property at the time of the sale.[8]Â  We conclude the trial court correctly applied
the law to the facts in determining that the cabin Monasco purchased from Monk
was personal property.Â  

Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  D.Â Â Â Â Â Â Â  The
Statute of Frauds Does Not Apply

Â 

Â Â Â Â Â Â Â Â Â Â Â  Monasco contends the trial court
erred in concluding the statute of frauds does not apply to the transaction
between Monasco and Monk.Â  In this
regard, the trial court concluded that Âthere is no requirement for the
inclusion of a restrictive covenant in the Bill of Sale of the sort normally
included in Deeds, nor is there any requirement for the contract of purchase to
be performable within one year.Â 

Â Â Â Â Â Â Â Â Â Â Â  Monasco
initially contends that an agreement for the sale of real property is not
enforceable against a person unless it is in writing and signed by that
person.Â  Tex. Bus. & Com. Code Ann. Â§ 26.01.Â  Because we hold that MonascoÂs lake house
purchase was not a purchase of real property, we further conclude the trial
court correctly found that the statute of frauds does not apply to the
transaction between Monasco and Monk.Â  

Â Â Â Â Â Â Â Â Â Â Â  Monasco
next contends that the trial court erroneously concluded[9]
that he is bound by the prohibitions of Article IV, Section 5 of the bylaws
prohibiting him from permitting any adult person not his spouse from residing
on the property located at 1044 PR 1130 in Gilmer.Â  Monasco bases this contention on the fact
that this restriction is permanent, is not subject to performance within one
year, and, therefore, violates the statute of frauds. Â See Tex. Bus. & Com. Code Ann. Â§Â 26.01(b)(6) (to be
enforceable, an agreement which is not to be performed within one year from
date of making of agreement must be in writing and signed by person to be
charged with agreement).[10]Â  

Â Â Â Â Â Â Â Â Â Â Â  The Club
responds that Monasco waived any complaint about the trial courtÂs findings and
conclusions that the statute of frauds does not apply.Â  The Club contends that because the trial
courtÂs findings of fact Âform the basis of the judgment upon all grounds of
recovery and of defense embraced therein,Â MonascoÂs failure to request
findings in support of his statute of frauds defense results in waiver on
appeal.Â  See Tex. R. Civ. P.
299.Â  

Â Â Â Â Â Â Â Â Â Â Â  Although it
is not clearly spelled out in its brief, the Club is apparently claiming that
Monasco cannot now claim the trial court erred in failing to apply the statute
of frauds to MonascoÂs agreement with the Club to abide by the Club bylaws
because he failed to request a finding to indicate there was no writing signed
by Monasco indicating his assent to be bound by the bylaws.Â  The waiver argument does not carry the
day.Â  Rule 299 provides, in full, that:

When findings of fact are filed by the trial
court they shall form the basis of the judgment upon all grounds of recovery
and of defense embraced therein.Â  The
judgment may not be supported on appeal by a presumed finding upon any ground
of recovery or defense, no element of which has been included in the findings
of fact; but when one or more elements
thereof have been found by the trial court, omitted unrequested elements,
when supported by evidence, will be
supplied by presumption in support of the judgment.Â  Refusal of the court to make a finding
requested shall be reviewable on appeal.

Â 

Tex. R. Civ. P.
299 (emphasis added).

Â 

Â Â Â Â Â Â Â Â Â Â Â  ÂWhen
a court makes findings of fact, but inadvertently omits an essential element of
a ground of recovery or defense, the presumption of validity will supply the
omitted element by implication.ÂÂ  Vickery v. CommÂn for Lawyer Discipline,
5 S.W.3d 241, 252 (Tex. App.ÂHouston [14th Dist.] 1999, pet. denied).Â  Here, the trial court specifically found:

4)Â 
Defendant CALVIN MONASCO was aware of the prohibition against nonmembers
not the spouse of a member from residing on Club property at the time he sought
membership in the Club through the purchase of the Club share from David Monk.

Â 

5)Â 
CALVIN MONASCO is bound by Article 4, Section 5 of the by-laws of the
Gilmer Boating and Fishing Club, as amended August 19, 1999, and is prohibited
from permitting any adult person not his spouse from residing on Club property.

Â 

Â Â Â Â Â Â Â Â Â Â Â  In finding that
Monasco is bound by the Club bylaws, the trial court implicitly found the
bylaws to be a binding contract or agreement between the Club and Monasco.[11]Â  The statute of frauds, set forth in Section
26.01 of the Texas Business and Commerce Code, provides that to be enforceable,
a promise or agreement which cannot be performed within one year from the date
of making the agreement must be in writing and signed by the person to be
charged with the promise.Â  Tex. Bus. & Com. Code Ann. Â§
26.01(b)(6); Niday v. Niday, 643
S.W.2d 919, 920 (Tex. 1982).Â  Thus, an
essential element of the statute of frauds defense is the existence of a
promise or agreement between the Club and Monasco.Â  Here, the presumption of validity will supply
the omitted element, i.e., that no signed writing exists between the Club and
Monasco indicating his assent to be bound by the bylaws.[12]Â  We find no waiver of the statute of frauds
defense on appeal.[13]

Â Â Â Â Â Â Â Â Â Â Â  Whether a
contract falls within the statute of frauds is a question of law.Â  Beverick
v. Koch Power Co., 186 S.W.3d 145, 149 (Tex. App.ÂHouston [1st Dist.] 2005,
pet. denied).Â  A contract that could
possibly be performed within a year, however improbable performance within one
year may be, does not fall within the statute of frauds.Â  Niday,
643 S.W.2d at 920 (stating that if an agreement, either by its terms or by the
nature of the required acts, cannot be performed within one year, it falls
within the statute of frauds and must be in writing).Â  The fact that the entire performance within
one year is not required or expected will not bring an agreement within the
statute. Â Id. 

Â Â Â Â Â Â Â Â Â Â Â  Here, Monasco contends that the permanent restriction
on who may reside with him in his lake house falls within the statute of frauds
because, by its terms, it cannot be performed within one year.Â  He points out that the restriction has been
in force since 1999, six years before he purchased the cabin in 2005.Â  According to the Club, Monasco orally
consented to the restriction at the June 2005 board meeting, two years prior to
the time the Club sought to enforce the restriction against him by filing suit
seeking injunctive relief in 2007.[14]

Â Â Â Â Â Â Â Â Â Â Â  The statute
of frauds does not apply if performance could conceivably be completed within
one year of the agreementÂs making.Â  Miller v. Riata Cadillac Co., 517 S.W.2d
773, 776 (Tex. 1974) (contract to pay employee bonus after approximately one
year could theoretically be performed before year expired); Young v. Fontenot, 888 S.W.2d 238, 241
(Tex. App.ÂElÂ Paso 1994, writ denied) (agreement to transfer stocks at
unspecified date in future was performable within one year and therefore not
within statute).Â  The duration of the
agreement here was one which coincided with the duration of MonascoÂs
membership in the Club.Â  This could be
for a lifetime or some other indefinite duration.Â  

Â Â Â Â Â Â Â Â Â Â Â  Agreements
to last during the lifetime of one of the parties do not require a signed
writing because the party on whose life the duration of the contract is
measured could die within a year of the agreementÂs making.Â  Young
v. Ward, 917 S.W.2d 506, 510 (Tex. App.ÂWaco 1996, no pet.).Â  Likewise, agreements requiring performance of
indefinite duration are generally not within the statute because such
agreements could conceivably be performed within a year of their making.Â  Bratcher
v. Dozier, 162 Tex. 319, 346 S.W.2d 795, 796 (1961).Â  

Â Â Â Â Â Â Â Â Â Â Â  The
Texas Supreme Court has also held that where an agreement cannot be completed
within one year, either by its terms or
by the nature of the required acts, that agreement falls within the
statute and must be in writing.Â  Niday, 643 S.W.2d at 920.Â  That is, where an oral contract omits the
performance term, duration may properly be implied from extrinsic evidence. Â If that evidence conclusively proves that the
contract cannot be completed within one year, the contract violates the statute
of frauds as a matter of law. Â Id.Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  There is no evidence here, extrinsic or otherwise,
which conclusively proves the contract could not be completed within one
year.Â  It is, in fact, possible that the
contract could be performed in one year in the circumstance the share and lake
house were sold within that time.[15]Â  Monasco points out that the restriction was
in place for over two years at the time of trial.Â  The objective determination of whether the
contract could be performed within one year does not permit consideration of
this factor.Â  See Keystone IntÂl, Inc. v. Ingham, 593
S.W.2d 354, 357 (Tex. Civ. App.ÂTexarkana 1979, no writ).Â  ÂTexas courts . . . have generally held that,
in the absence of a known date when performance will be completed, the statute
of frauds does not apply if performance could conceivably be completed within
one year of the agreementÂs making.ÂÂ  Young, 917 S.W.2d at 509.Â  Here, the contract could conceivably be
performed within one year. Â Accordingly,
the trial court correctly concluded that Monasco is bound by the prohibitions
of Article IV, Section 5 of the Club bylaws prohibiting Monasco from permitting
any adult person not his spouse from residing at the lake house.

III.Â Â Â Â Â Â  CONCLUSION

Â 

Â Â Â Â Â Â Â Â Â Â Â  We
affirm the judgment of the trial court.

Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date
Submitted:Â Â Â Â Â Â Â Â Â  April 12, 2011 

Date
Decided:Â Â Â Â Â Â Â Â Â Â Â Â  April 27, 2011

Â 











[1]The
record indicates the ClubÂs status as an unincorporated association was
disputed in the trial court.Â  No ruling
was ever requested on this issue, and the trial court did not make a ruling on
it.Â  Neither was a request made for a
further finding of fact on the issue.Â  At
oral argument, Calvin MonascoÂs attorney stated he did not question the status
of the organization.Â  This issue was not
raised on appeal, and we, therefore, do not address it.Â  Tex.
R. App. P. 38.1.Â  

Â 





[2]The
judgment of the trial court provided that Article IV, Section 5 of the Club
bylaws is enforceable against Monasco and that he is bound by said
provision.Â  Accordingly, the judgment
provides that Monasco Âis prohibited from permitting any adult person not the
spouse of Defendant from residing on the property located at 1044 PR 1130,
Gilmer, Texas.ÂÂ  

Â 





[3]The
seven votes required for approval was met.Â 


Â 





[4]The
trial court found that Monasco attended the board meeting of the Club in June
2005 seeking approval of a sale that permitted him to become a shareholder and
member in the Club and that Monasco was aware of the prohibition against
nonmembers not the spouse of a member from residing on Club property.Â  The trial court further found that ÂCALVIN
MONASCO is bound by Article 4, Section 5 of the by-laws of the Gilmer Boating
and Fishing Club, as amended August 19, 1999, and is prohibited from permitting
any adult person not his spouse from residing on Club property.ÂÂ  

Â 





[5]The
question of consideration has not been mentioned.Â  However, it is apparent that in exchange for
Club membership, which included use of the grounds for fishing privileges, the
right to erect or move cabins, and use of the club water well, Monasco agreed
to abide by the bylaw prohibiting nonmembers (except a spouse) from living with
him on Club property.Â  

Â 





[6]The
statute of frauds provides that an agreement for the sale of real estate is not
enforceable against a person unless it is signed by that person. Â See
Tex. Bus. & Com. Code Ann. Â§
26.01 (Vernon 2009); Cate v. Woods,
299 S.W.3d 149, 152 (Tex. App.ÂTexarkana 2009, no pet.).

Â 





[7]There
is no contention that the house in this case was a mobile home, and in fact,
the evidence indicates that it was not a mobile home.Â  





[8]Monasco
did not dispute this characterization until the issue of LarryÂs continued
residence in the cabin caused problems.

Â 





[9]Conclusion
of law number one provides:

Â 

Declaratory
Relief in conformity with the Uniform Declaratory Judgment Act, Chapter 37, of
the Civil Practice and Remedies Code of Texas, is appropriate and should be
granted, declaring that Calvin Monasco is subject to the prohibitions of
Article 4, Section 5 of the by-laws of the Gilmer Boating and Fishing Club, as
amended August 19, 1999, prohibiting him from permitting any adult person not
his spouse from residing on the property located at 1044 PR 1130, Gilmer,
Texas. 

Â 





[10]The
evidence indicates that Monasco never signed a written agreement wherein he
agreed to abide by the Club bylaws, and in particular, the bylaw restricting
who may reside in the cabin Monasco purchased from Monk. 

Â 





[11]In
its original petition, the Club specifically asked the trial court to declare
that the Club bylaws are an enforceable contract between the Club and its
members.Â  

Â 





[12]The
undisputed evidence establishes that no such signed agreement exists.

Â 





[13]The
trial courtÂs finding of fact number five is essentially the same as conclusion
of law number one.Â  Conclusions of law
are reviewable to determine whether the law was incorrectly applied to the
facts.Â  Marchand, 83 S.W.3d at 794.Â 
Monasco essentially attacks this conclusion as being erroneous as a
matter of law.

Â 





[14]Texas
courts have recognized that association bylaws constitute a contract between
the parties.Â  Lundine, 183 S.W.2d at 273; Brown,
194 S.W. at 1180; Gaines, 119 S.W. at
877.





[15]Monasco
testified that he attempted to obtain the ClubÂs permission to sell the share
and the lake house to his son Ace but did not receive a response from the Club
in this regard.Â